Filed 4/8/2025 9:37 AM
Janice L. Hawthorne
District Clerk
Matagorda County, Texas
Robin Daniel, Deputy

25-F-0141

CAUSE NO. _____

| | | |
|---|---|---|
| **BITMAIN TECHNOLOGIES GEORGIA LIMITED,** | § § § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § § | Matagorda County - 130th District Court |
| | § | **MATAGORDA COUNTY, TEXAS** |
| **v.** | § | |
| | § | |
| **ORB ENERGY CO. and JAMIESON ZANIEWSKI a.k.a. JAMIESON HILL,** | § § § | |
| | § | **130TH JUDICIAL DISTRICT** |
| *Defendant.* | | |

## PLAINTIFF'S VERIFIED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Plaintiff Bitmain Technologies Georgia Limited ("Bitmain" or "Plaintiff"), respectfully requests this Court to enter a temporary restraining order and temporary injunction enjoining the defendants, Orb Energy Co. ("Orb") and Jamieson Zaniewski a.k.a Jamieson Hill ("Zaniewski" and together with Orb, "Defendants") from:

(i)     preventing Bitmain from entering Orb's data center located at 4947 County Road 126, Van Vleck, TX 77482 (the "Data Center Facility") for the purpose of removing Bitmain's property, including 2,700 of Bitmain's Bitcoin mining servers (the "Hosted Servers") currently located at that facility;

(ii)    selling, transferring, or otherwise disposing of any Bitcoin mined using the Hosted Servers; and

(iii)    selling, transferring, or otherwise disposing of any funds derived from the sale, transfer, or disposition of any Bitcoin mined using the Hosted Servers.

In support of this Application, Bitmain adopts by reference the statements in and exhibits to *Plaintiff's Verified Original Petition for Injunctive Relief* (the "Petition") filed on April 8, 2025. TEX. R. CIV. P. 58. Capitalized terms not otherwise defined herein shall have the meanings given them in the Petition.

---

Plaintiff's Verified Emergency Application for Temporary Restraining Order
and Temporary Injunction

1

## Background

1.      This is an action to recover property that Defendants have stolen.  Bitmain and Orb entered into a contract, the Hosting Sale Agreement (the "Agreement").  *See* Petition Ex. A.  Under the terms of the Agreement, Orb is obligated to supply the Data Center Facility hosting the Hosted Servers and to provide electric power and internet access sufficient to allow Bitmain to use the Hosted Servers to mine Bitcoin.  Bitmain is entitled to receive all Bitcoin mined using the Hosted Servers.

2.      That did not happen.  Instead, Orb manipulated the Hosted Servers so that they would mine Bitcoin for Orb, not Bitmain.  Since at least December 4, 2024, Orb has stolen the use of Bitmain's property, unjustly enriching itself in breach of the express terms of the Agreement and in violation of Texas law.  Bitmain has demanded that Orb cease its tortious conduct and has engaged in lengthy negotiations with Orb regarding Orb's breach of the Agreement.   These negotiations have come to an impasse, however.  Orb refuses to honor the terms of its agreement with Bitmain and continues to steal Bitmain's Bitcoin.

3.      As a result of Orb's misconduct, on April 3, 2025, Bitmain notified Orb of its intent to withdraw the Hosted Servers pursuant to Clause 5.1(b) of Schedule B of the Agreement, which allows Bitmain to remove its property at any time.  Orb has locked Bitmain out of the Data Center Facility, has refused to return Bitmain's property, and continues to operate the Hosted Servers to mine Bitcoin for itself.

4.      Defendants' conduct risks irreparably damaging Bitmain.  Defendants have already destroyed more than 50 of Bitmain's Hosted Servers by improperly operating the servers, and each day Defendants are allowed to operate the servers they risk damaging more of these sophisticated electronic devices.  Moreover, if Defendants are allowed to sell the Bitcoin they have mined using

Bitmain's Hosted Servers, they risk inadvertently destroying the Bitcoin via a process known as "burning" the Bitcoin.

5.      By this Application, Bitmain seeks to maintain the status quo regarding Bitmain's rights to its own property.  There can be no dispute: Bitmain owns the Hosted Servers and has a right to use its property for its own benefit.  Bitmain simply asks the Court to grant it the right that it should already enjoy: the possession and use of its own property.

6.      Bitmain also seeks to freeze during the pendency of this litigation all Bitcoin that Orb has mined using Bitmain's Hosted Servers and any funds derived from the sale thereof so that Orb cannot make itself judgment-proof by selling or otherwise disposing of these assets.

7.      Notably, under the Agreement, Orb "acknowledge[d] that monetary damages may not provide a remedy in the event of certain breach of Hosting Provider's [i.e., Orb's] obligations to this Agreement . . . and waive[d] any claim or defense that damages may be adequate or otherwise preclude injunctive relief."  Petition Ex. A, Clause 10.1, pg. 19.  Moreover, Orb agreed that in the event of a breach, Bitmain has the "right to enforce this Agreement by means of injunction, both mandatory (specific performance) and preventive, without the necessity of obtaining any form of bond or undertaking whatsoever."  *Id.*

## Legal Standard

8.      The purpose of a temporary injunction is to maintain the status quo of the litigation's subject matter pending a trial on the merits.  *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *Elec. Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex. App.—Dallas 1974, no writ).

9.      The general injunction statute is in the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code § 65.011. Under the statute, an injunction may be granted if:

(1) the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;

(2) a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

(3) the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions;

. . .

(5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law.

*Id.*

10.     "The party applying for a temporary injunction 'must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.'" *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

## ARGUMENT

### I.     Causes of Action

11.     As pleaded in the Petition, Bitmain asserts a cause of action against Orb and Zaniewski for Breach of Contract.  The first element is therefore satisfied: Bitmain has stated a cause of action against Defendants.

### II.     Probable Right to Relief

12.     In violation of the express terms of the Agreement, Defendants have used Bitmain's property to enrich themselves and have interfered with Bitmain's right to remove its property from the Data Center Facility.  Accordingly, Bitmain has a probably right to the relief sought.

---

13.     Orb's owner, Jamieson Zaniewski, has admitted that Orb has used Bitmain's Hosted Servers to mine Bitcoin for Orb's own account.   On or about March 7, while at Bitmain's Shenzhen, China offices, Zaniewski acknowledged that Hosted Servers were operational at the Data Center Facility.  (Pet. ¶ 33.)  In fact, Zaniewski revealed that Orb's use of the Hosted Servers had damaged more than fifty of the Hosted Servers, which Orb had operated without turning on the heat pump, a critical component.  (*Id.*)  Zaniewski further admitted that Orb retained possession of Bitcoin that Orb had mined using Bitmain's Hosted Servers but refused to return the Bitcoin. (*Id.*)  At no time has Bitmain authorized Orb to operate its Hosted Servers, much less to use the servers to mine Bitcoin for Orb's benefit.

14.     Bitmain's independent investigation has confirmed Zaniewski's admissions.  Bitmain has analyzed data showing the mining pools to which its Hosted Servers are connected.  (Pet. ¶ 34.) This analysis shows that as of December 9, 2024 at least 2,611 Hosted Servers were connected to the stratum+tcp://btc.f2pool.com:1314 Bitcoin mining pool.  (*Id.*)  Bitmain did not authorize Orb to connect to the stratum+tcp://btc.f2pool.com:1314 mining pool.  (*Id.*)  Due to Orb's interference, Bitmain has been unable to monitor its Hosted Servers since December 9, 2024.  (*Id.*)

15.     Orb has breached the express terms of the Agreement by using the Hosted Servers to mine Bitcoin for itself.  The Agreement is clear:

> Under no circumstances will Hosting Provider [i.e., Orb] redirect the hash power of the Hosted Servers to its own mining pool or any mining pool not authorized in writing by BITMAIN, operate (power-on or power-off) the Hosted Servers without BITMAIN's written consent, . . . or take any other actions that may interfere with BITMAIN's legal and beneficial ownership, operation or monitoring of the Hosted Servers and other BITMAIN Property.

Petition Ex. A, Schedule B to Agreement, Clause 3.16, pg. 38.

16.     Similarly, Clause 5.3 of Schedule B to the Agreement provides that the "Hosting Provider [i.e., Orb] shall not under any circumstances utilize[] the Hosted Servers for self-mining purpose." Petition Ex. A, pg. 40.

17.     By manipulating the Hosted Servers so that their computational power (i.e., their hashing power) was directed towards a Bitcoin mining pool with rewards for Orb or an Orb affiliate, Defendants breached Clauses 3.16 and 5.3 of Schedule B to the Agreement.  Moreover, by refusing to return the Bitcoin Orb has self-mined, Defendants breached Clause 5.4 of Schedule B to the Agreement.

18.     Orb has also breached the Agreement's provisions relating to return of Bitmain's property. Clause 5.1(b) of Schedule B of the Agreement provides that "BITMAIN may remove the BITMAIN Property at any time from the Data Center Facility."  Orb has refused to allow Bitmain unfettered access to the Data Center Facility to retrieve the Hosted Servers, as Bitmain demanded on April 3, 2025 and multiple times thereafter.  Orb has, therefore, breached Clause 5.1(b) of Schedule B to the Agreement.

## III.    Irreparable Injury

19.     Each day Defendants are allowed to continue their illegal conduct they risk irreparably damaging Bitmain.  *First*, in entering into the Agreement, Defendants waived any argument that monetary damages would adequately compensate Bitmain for a breach of the Agreement.  *Second*, by taking control of the Hosted Servers and using Bitmain's property without the requisite operational experience, Defendants risk damaging the sensitive electronic devices.  *Third*, if not restrained from transferring the Bitcoin Defendants have illegally mined, Defendants may inadvertently destroy the Bitcoin, rendering themselves incapable of adequately compensating Bitcoin for its injuries.  *Fourth*, Defendants have disrupted Bitmain's business operations.  *Fifth*,

due to the variable nature of Bitcoin mining and the sometimes substantial fluctuations in the price of Bitcoin, Bitmain's damages from Defendants' conduct are not amenable to ready calculation.

20.     An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex.App.-Dallas 1989, no writ). *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("In saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered."); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex. App. 1995) ("Incidentally, legal remedy is inadequate if, among other things, damages are difficult to calculate or their award may come too late."); *Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 317 (Tex. App. 2003) ("An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief.").

21.     *First*, under Clause 10.1 of the Agreement, Orb waived any argument that monetary damages would adequately compensate Bitmain for a breach of the Agreement:

> Hosting Provider acknowledge that monetary damages may not provide a remedy in the event of certain breach of the Hosting Provider's obligations to this Agreement and therefore . . . Hosting Provider grants to BITMAIN the right to enforce this Agreement by means of injunction . . . without the necessity of obtaining any form of bond or undertaking whatsoever, and waives any claim or defense that damages may be adequate or otherwise preclude injunctive relief.

Petition Ex. A, Clause 10.1, pg. 19.

22.     *Second*, Orb's inartful operation of the Hosted Servers has already destroyed more than fifty servers and risks the destruction of more if Bitmain is not allowed to remove its property from the Data Center Facility.  An applicant seeking to prevent irreparable injury to real or personal

property does not have to prove that there is no adequate remedy at law.  TEX. CIV. PRAC. & REM. CODE § 65.011(5).  The Hosted Servers are sophisticated electronic devices that require technical know-how to operate and require periodic maintenance.  Accordingly, the Agreement contemplates that Bitmain would operate and maintain the Hosted Servers.  By accessing the Hosted Servers without Bitmain's authorization and operating them without the requisite operational expertise, Orb creates a significant risk of damage to the miners—damage which Orb, again without the requisite experience in maintaining Bitcoin mining servers, would be unable to repair.  Each day Orb operates the miners without Bitmain's authorization, Orb creates the risk that the miners will sustain permanent damage, preventing them from ever returning to their peak performance.

23.     In fact, this risk has already materialized.  Zaniewski has admitted that more than fifty of the Hosted Servers have suffered catastrophic damage while Orb has been operating them.  Orb's continued operation of the Hosted Servers risks similar, irreparable damage to the remaining Hosted Servers.

24.     *Third*, Orb also risks the irreversible loss of all Bitcoin it has illegally mined.  Bitcoin is stored in digital wallets on the Bitcoin blockchain.  To send Bitcoin between wallets, a user must supply the address for the recipient wallet, an alphanumeric code that is functionally equivalent to an account number.  If the sender enters the incorrect wallet address or attempts to send the Bitcoin to a wallet that is not configured to accept Bitcoin, the Bitcoin will be deducted from the sender's wallet but will not be credited to the recipient's wallet.  Because there is no central authority governing the Bitcoin blockchain, such a transaction cannot be undone, and the sent Bitcoin is "burned"—which is to say, irretrievably lost, making Defendants unable to satisfy a judgment requiring return of the illegally mined Bitcoin.  *See Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex. App. 2002) (plaintiff demonstrated irreparable injury and inadequate remedy at law where

"the evidence suggests [defendant] will become insolvent, judgment-proof, and as stated by the trial court, 'an empty shell'" if creditor was allowed to take possession of defendant's assets); *31 Holdings I, LLC v. Argonaut Ins. Co.*, 640 S.W.3d 915, 927 (Tex. App. 2022) (evidence of a threatened injury where "the evidence that [defendants] are selling assets and evading financial obligations supports a reasonable inference of a deteriorating financial condition that would affect [defendant's] ability to fully satisfy a money judgment").

25.     An injury is irreparable if the defendant is or will become insolvent, also necessitating the freeze of any funds derived from the sale, transfer, or disposition of Bitcoin mined using the Hosted Servers.  *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex.App.-San Antonio 2001, no pet.); *Surko Enter., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.-Houston [1st Dist.] 1989, no writ).

26.     *Fourth*, Bitmain is also in severe danger of suffering imminent and irreparable injury because by diverting the computational power of Bitmain's Hosted Servers and using them to mine Bitcoin for itself, Defendants have disrupted Bitmain's business, which threatens Bitmain with irreparable harm.  *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App. 2009) ("Disruption to a business can be irreparable harm."); *Lavigne v. Holder,* 186 S.W.3d 625, 629 (Tex.App.-Fort Worth 2006, no pet.) (same).

27.     *Fifth*, Bitmain's potential damages are incapable of accurate calculation.  *K & G Oil Tool & Serv.,* 158 Tex. 594, 314 S.W.2d at 791 ("irreparable injury" shown by inability of plaintiff to determine how much lost sales and revenue would result from improper use of trade secret). Bitmain is not guaranteed to mine a specific amount of Bitcoin using the Hosted Servers.  Rather, by directing the computational power of the Hosted Servers towards Bitmain's mining pool,

Bitmain increases the likelihood that Bitmain will receive Bitcoin rewards during a certain time period. Accordingly, Bitmain's damages if Defendants are allowed to continue using Bitmain's Hosted Servers to mine Bitcoin for their own benefit are incapable of precise calculation.

28.    The third element is therefore satisfied: Plaintiff has shown a probable, imminent, and irreparable injury if Defendants are not enjoined from preventing Bitmain from entering the Data Center Facility for the purpose of removing Bitmain's property, including but not limited to the Hosted Servers.

<u>**Prayer For Relief**</u>

Wherefore, Plaintiff prays for a temporary restraining order and a temporary injunction as follows:

A.    Defendants are enjoined and prohibited from preventing Bitmain from entering the Data Center Facility for the purpose of removing Bitmain's property, including but not limited to the Hosted Servers;

B.    Defendants are enjoined and prohibited from selling, transferring, or otherwise disposing of any Bitcoin mined using the Hosted Servers;

C.    Defendants are enjoined and prohibited from selling, transferring, or otherwise disposing of any funds derived from the sale, transfer, or disposal of any Bitcoin mined using the Hosted Servers;

D.    The temporary restraining order and temporary injunction are binding on the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise;

E.    Such other and further relief, in law or equity, as this Court may deem appropriate.

4896-6018-8719 v.1

DATED: April 8, 2024

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Kasi Chadwick*

**KASI CHADWICK**
Texas Bar No. 24087278
Email: kasi.chadwick@nelsonmullins.com
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Tel: (346) 646-3221
Fax: (346) 241-3758

**JACOB SPARKS**
Texas Bar No. 24066126
Email: jacob.sparks@nelsonmullins.com
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Tel: (469) 484-4758
Fax: (469) 828-7217

*Attorneys for Plaintiff*
*Bitmain Technologies Georgia Limited*

4896-6018-8719 v.1

CAUSE NO. _____

| | | |
|---|---|---|
| BITMAIN TECHNOLOGIES GEORGIA LIMITED, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | MATAGORDA COUNTY, TEXAS |
| ORB ENERGY CO. and JAMIESON ZANIEWSKI a.k.a. JAMIESON HILL, | § | |
| | § | |
| *Defendants.* | § | 130th JUDICIAL DISTRICT |
| | § | |

---

### DECLARATION OF ZIPENG ZHAO VERIFYING PLAINTIFF'S VERIFIED PETITION FOR INJUNCTIVE RELIEF

---

I, Zipeng Zhao, declare under penalty of perjury the following:

1.  I am an authorized signatory for Plaintiff Bitmain Technologies Georgia Limited.

2.  I am of sound mind.

3.  I have never been convicted of a felony or a crime of moral turpitude.

4.  I am fully competent to make this Declaration.

5.  The statements contained in this Declaration are true and correct.

6.  The statements contained in this Declaration are based on my personal knowledge

7.  I have read the foregoing *Plaintiff's Verified Original Petition for Injunctive Relief* (the "***Petition***") and contemporaneously filed *Plaintiff's Emergency Application for Temporary Restraining Order and Temporary Injunction* (the "***Application***").

8.  The statements of fact set forth in paragraphs 10 through 49 of the Petition and paragraphs 1 through 7 of the Application are based on information known to me and information obtained

---

Declaration of Zipeng Zhao Verifying Plaintiff's Verified Petition for Injunctive Relief
Page 1

EXHIBIT
A

from Plaintiff's business records and information otherwise maintained by Plaintiff.  Those statements of fact are based on my personal knowledge and are true and correct.

9.      As shown in the facts set forth in the Petition and Application, Plaintiff will suffer immediate and irreparable injury and loss unless this Court enters a temporary restraining order enjoining Defendants from **(i)** preventing Bitmain from entering the Data Center Facility for the purpose of removing Bitmain's property, including but not limited to the Hosted Servers; **(ii)** selling or otherwise disposing of any Bitcoin mined using the Hosted Servers; **(ii )** denying Bitmain access to the Hosted Servers, including to remove the Hosted Servers from the Data Center Facility; or **(iv)** selling or disposing of the Hosted Servers.

10.     My name is Zipeng Zhao, my date of birth is February 1, 1999, and my address is Building 1, Yard 9 Fenghao East Road, Haidian District, Beijing, China.  I declare under penalty of perjury under the laws of the United States of America that the information contained in this Declaration is true and correct to the best of my knowledge and belief.

*[SIGNATURE PAGE FOLLOWS]*

Executed in _Toronto_, _Canada_ on April_2_, 2025.


**Signature:** _____

**Printed Name:** Zipeng Zhao

**Title:** Authorized Signatory for Plaintiff Bitmain Technologies
Georgia Limited

CAUSE NO. 25-F-0141 _____

| | | |
|---|---|---|
| **BITMAIN TECHNOLOGIES GEORGIA LIMITED,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § § | Matagorda County - 130th District Court |
| **v.** | § § | **MATAGORDA COUNTY, TEXAS** |
| **ORB ENERGY CO. and JAMIESON ZANIEWSKI a.k.a. JAMIESON HILL,** | § § § § | |
| *Defendant.* | § | **130TH JUDICIAL DISTRICT** |

## TEMPORARY RESTRAINING ORDER

Before the Court is the Emergency Application for Temporary Restraining Order (the "Application") filed by the Plaintiff, Bitmain Technologies Georgia Limited ("Bitmain"), requesting this Court to enter a temporary restraining order prohibiting and enjoining the Defendants Orb Energy Co. ("Orb") and Jamieson Zaniewski a.k.k Jamieson Hill ("Zaniewski" and together with Orb "Defendants") from:

    **(i)**    Preventing Bitmain from entering Orb's data center located at 4947 County Road 126, Van Vleck, TX 77482 (the "Data Center Facility") for the purpose of removing Bitmain's property, including 2,700 of Bitmain's Bitcoin mining servers (the "Hosted Servers") currently located at that facility; and

    **(ii)**    selling, transferring, or otherwise disposing of any Bitcoin mined using the Hosted Servers; and

    **(iii)**    selling, transferring, or otherwise disposing of any funds derived from the sale of any Bitcoin mined using the Hosted Servers.

After considering the Application, the supporting Declaration of Zipeng Zhao, the supporting Declaration of Ruixin Feng, Plaintiff Bitmain's Verified Original Petition for Injunctive Relief (the

"Petition"), the relevant legal authorities, the documents and pleadings on file, and the arguments of counsel, the Court has determined:

1.      If Defendants are not restrained, enjoined, and prohibited from preventing Bitmain from entering the Data Center Facility for the purpose of removing Bitmain's Hosted Servers, Bitmain will be irreparably injured by irreparable damage to Bitmain's Hosted Servers.

2.      If Defendants are not restrained, enjoined, and prohibited from preventing Bitmain from entering the Data Center Facility for the purpose of removing Bitmain's Hosted Servers, Bitmain will be irreparably injured by a significant disruption to Bitmain's business operations leading to losses that are impractical to calculate and that cannot be adequately remedied at trial.

3.      If Defendants are not restrained, enjoined, and prohibited from selling, transferring, or disposing of any Bitcoin mined while the computational power for the Hosted Servers is directed to a mining pool with rewards for Orb or any affiliated entity, Bitmain will be irreparably injured due to the significant risk of loss of such Bitcoin, rendering Defendants unable to adequately compensate Bitmain for its loss.

4.      If Defendants are not restrained, enjoined, and prohibited from selling, transferring, or disposing of any funds derived from the sale or disposition of any Bitcoin mined while the computational power for the Hosted Servers is directed to a mining pool with rewards for Orb or any affiliated entity, Bitmain will be irreparably injured due to the significant risk of loss of such funds, rendering Defendants unable to adequately compensate Bitmain for its loss.

5.      The status quo should be maintained, and it is necessary to issue this Temporary Restraining Order against Defendants to preserve the status quo between the parties prior to the hearing on Bitmain's Application for Temporary Injunction.

4908-2706-4838 v.2

6.      It is necessary to issue this Temporary Restraining Order against Defendants to prevent imminent and irreparable harm to Bitmain.

7.      This Temporary Restraining Order will not disserve the public interest.

        **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** as follows:

A.      Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Temporary Restraining Order by personal service or otherwise, are restrained, enjoined, and prohibited from the following:

      i.      preventing Bitmain from entering Orb's data center located at 4947 County Road 126, Van Vleck, TX 77482 (the "<u>Data Center Facility</u>") for the purpose of removing Bitmain's property, including 2,700 of Bitmain's Bitcoin mining servers (the "<u>Hosted Servers</u>") currently located at that facility; and/or

      ii.     selling, transferring, or otherwise disposing of any Bitcoin mined using the Hosted Servers; and/or

      iii.    selling, transferring, or otherwise disposing of any funds derived from the sale of any Bitcoin mined using the Hosted Servers.

B.      This Temporary Restraining Order is binding on the parties to the action, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Temporary Restraining Order by personal service or otherwise;

C.      A hearing on Plaintiff's Verified Application for Temporary Injunction shall take place on _____ ___, 2025 at _____ ___.m.;

D.      Bitmain must post a bond in the amount of $_____ conditioned and approved as

required by law; and

E.      This Temporary Restraining Order will expire at _____ ____.m. on _____ ____, 2025.

        IT IS SO ORDERED.


        SIGNED this _____ day of April 2025, at _____ ____.m.



                                        _____
                                        **JUDGE PRESIDING**

4908-2706-4838 v.2