CAUSE NO. 25-F-0135

| | | |
|---|---|---|
| **ORB ENERGY CO.** | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| **BITMAIN TECHNOLOGIES** | § | |
| **GEORGIA LIMITED** | § | 130TH JUDICIAL DISTRICT |
| | § | |
| v. | § | |
| | § | |
| **JAMIESON ZANIEWSKI a/k/a** | § | |
| **JAMIESON HILL** | § | MATAGORDA COUNTY, TEXAS |

## TEMPORARY INJUNCTION

On this day, the Court considered the Application for Temporary Injunction dated April 4, 2025, filed by Defendant/Counter-Plaintiff, Bitmain Georgia Technologies Limited ("Bitmain"), against Plaintiff/Counter-Defendant, Orb Energy Co. ("Orb"), and Third-Party Defendant, Jamieson Zaniewski a/k/a Jamieson Hill ("Zaniewski"). After considering the Application, any response or answer filed, the evidence presented, and the arguments of counsel, the Court finds and orders as follows.

I.

1. The Court finds that Orb presented evidence that immediate removal of the bitcoin mining servers or containers in which they are located would cause irreparable harm to Orb. The evidence presented establishes that if the servers or containers are removed, or if Orb is unable to operate the servers to mine and sell bitcoin, Orb will be unable to generate revenue necessary for its continued daily operation. The Court further finds this harm is irreparable because Bitmain is Orb's only customer for the data center and that Orb has no other means to generate revenue. The Court further finds that Orb has a contractual agreement with Jackson Electric Cooperative, Inc. to purchase approximately 15MW of electricity per month for the data center at certain agreed upon rates. The Court further finds that Orb has a contractual agreement with NuEnergen, LLC under which it agreed to curtail load during peak demand hours. The Court further finds that if Orb will be in breach of these agreements if it fails to draw the requisite load or fails to curtail load. The Court further finds that the only way for Orb to comply with these agreements is for Orb to

operate the mining servers at their full computational power which requires that they be used for mining bitcoin.

2. The Court further finds that Orb requires additional time to find a replacement client for the data center. The Court further finds that Orb has sufficient personnel and procedures in place to safely operate and maintain the miners. The Court further finds there is no evidence of imminent or irreparable harm to the miners or any of Bitmain's other property at the data center if they are allowed to remain in Orb's possession, custody, or control for a specified period of time and subject to the terms of this order.

3. The Court further finds that granting the injunctive relief requested by Bitmain in the Application would cause irreparable harm to Orb because it would effectively put Orb out of business. The Court further finds that harm to Orb that would be caused by granting the injunctive relief sought would be greater than any potential benefit to Bitmain. The Court further finds that the balance of the equities allows for Orb to maintain operation, control, and possession of the miners and to continue mining and selling bitcoin subject to the terms and conditions below.

4. The Court further finds that Orb has no adequate remedy at law. The evidence presented at the April 28, 2025 hearing established that immediate removal of the servers without allowing Orb additional time for the opportunity for Orb to find a replacement client for the data center will destroy essentially all of Orb's economic value. The Court further finds that such damages would be impossible or impractical to calculate. The Court therefore finds that a judgment for money damages against Bitmain is an inadequate remedy.

5. The Court further finds that both parties have alleged breach, and have a probable right to relief on the merits and that a temporary injunction is necessary to preserve the property during litigation.

II.

IT IS THEREFORE ORDERED:

1. Orb shall be entitled to retain possession, operation, and control of the miners and containers for a period not to exceed 60 days except by further order of the court or written agreement of the parties signed and filed in compliance with Tex. R. Civ. P. 11.
2. During the 60-day period, Orb shall be entitled to:

    a. Continuing mining operations using the miners,

    b. Sell any bitcoin mined for the limited purpose of generating revenue for Orb Energy to pay for the following operating expenses:

        i. Electricity,

        ii. Internet service,

        iii. Payroll expenses,

        iv. Insurance,

        v. Security and maintenance of the data center, and

        vi. Any other expense as approved by further order of the court or written agreement of the parties signed and filed in compliance with T.R.C.P. 11.

3. During the 60-day period, Orb shall be required to:

    a. Provide Bitmain physical access to the data center and the servers upon twenty-four (24) hours written, emailed notice to Orb's counsel. Such notice shall include the name and copy of a photo ID of the Bitmain personnel who will be present.

    b. Provide Bitmain accurate records of the proceeds and use of mined bitcoin prior to the signing of this temporary injunction. This report is due on or before Friday, May 9, 2025 by 5:00 p.m.

    c. Keep and maintain accurate records of all bitcoin mined and sold using the miners starting with the day this temporary injunction is entered and provide the reports weekly to Bitmain counsel every Friday beginning on the first Friday following the entry of this temporary injunction, no later than 5:00 p.m.

    d. Keep and maintain accurate records of the use of all proceeds of mined bitcoin starting with the day this temporary injunction is entered and provide the reports weekly to Bitmain counsel every Friday beginning on the first Friday following the entry of this temporary injunction, no later than 5:00 p.m.

    e. Notify Bitmain of any damage or loss of any servers or equipment within two (2) hours of Orb discovering damage or loss.

    f. Allow Bitmain to install any software on the miners that Bitmain requires to remotely view the operational status of servers, provided however that Bitmain

shall not install any such software that in any way interferes with or prevents Orb from mining or selling bitcoin as authorized under this Order.

g. Continue to provide electricity and water to the site and be responsible for site security, environment safety and stable daily operation of the Data Center Facility.

4. During the sixty (60) day period, Bitmain shall be required to:
    a. Provide any and all operational and maintenance support necessary to ensure the proper function of the miners.
    b. Provide email and telephone contact information to Orb and Bitmain counsel of the designated Bitmain contact(s) to receive emergency or maintenance notifications from Orb no later than forty-eight (48) hours after this temporary injunction is entered.

5. During the sixty-day (60) period, no party shall be entitled to sell, transfer, convey, or encumber the miners or the containers except by further order of this Court or written agreement of the parties signed and filed in compliance with Tex. R. Civ. P. 11.

6. This order shall expire on July 5, 2025 except by further order of this Court or written agreement of the parties signed and filed in compliance with Tex. R. Civ. P. 11.

IT IS ORDERED that the bond previously paid by Bitmain in connection with the Temporary Injunction shall be serve as bond for this Temporary Injunction.

SIGNED May 6, 2025 at 11:48 AM.

_____
Honorable Denise M. Fortenberry
Presiding Judge

FILED
at 1:46 o'clock P M.
MAY 0 6 2025
JANICE L. HAWTHORNE
Clerk of District Court Matagorda Co., Texas
By_____ DEPUTY