## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Orb Energy Co.,** | § | **Case No. 25-80363** |
| | § | |
| *Debtor.* | § | |
| | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |
| | § | |
| **Orb Energy Co.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Adv. No. 25-08003** |
| | § | |
| **Bitmain Technologies Georgia Limited,** | § | |
| | § | |
| *Defendant,* | § | |
| | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |
| | § | |
| **Bitmain Technologies Georgia Limited,** | § | |
| | § | |
| *Counter-Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Orb Energy Co. and Jamieson Zaniewski a.k.a. Jamieson Hill,** | § | |
| | § | |
| *Counter-Defendants.* | § | |
| | § | |

## BITMAIN TECHNOLOGIES GEORGIA LIMITED'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Bitmain Technologies Georgia Limited ("**Bitmain**") files this pleading in compliance with the Court's *Order Setting Rule 7016 Conference, Requiring Rule 7026 Meeting, Establishing Procedures for Discovery Disputes, and Emphasizing Applicability of Certain Federal Rules of Civil Procedure as Made Applicable by the Federal Rules of Bankruptcy Procedure* [ECF No. 4], particularly paragraphs 5 and 10 thereof, which require amendments to answers to meet the standards of Federal Rule of Civil Procedure 8 (as made applicable by Federal Rule of Bankruptcy Procedure 7008). Pursuant to Federal Rules of Civil Procedure 7(a) and 13 (as made applicable by Federal Rules of Bankruptcy Procedure 7007 and 7013), counterclaims are not standalone pleadings but must be asserted as components of an answer. Accordingly, Bitmain files its First Amended Answer and Affirmative Defenses to Orb Energy Co.'s ("**Orb**") complaint and First Amended Counterclaims against Orb and Jamieson Zaniewski a.k.a. Jamieson Hill ("**Zaniewski**").

## I.  ANSWER TO ORB'S ORIGINAL PETITION

### Discovery Control Plan

**1.**  Bitmain admits that Orb pleaded a discovery control plan of Level 3 under the Texas Rules of Civil Procedure; Bitmain denies any remaining allegations in this first paragraph.

### Parties

**2.**  Bitmain is without sufficient knowledge to admit or deny allegations in the second paragraph and therefore denies the same.

**3.**  Bitmain denies that it is a limited partnership. Bitmain admits the remaining allegations in the third paragraph.

### Jurisdiction and Venue

**4.**  Bitmain admits that (**a**) the Matagorda County District Court had subject matter jurisdiction before this case was removed to this Court, (**b**) this Court now has subject

matter jurisdiction, and (**c**)  Orb's facility is located in Van Vleck, Texas. Bitmain denies the remaining allegations in the fourth paragraph.

### Statement of Facts

**5.**     Bitmain admits that Bitmain and Orb parties entered into the Hosting Sale Agreement (the "***HSA***") and Hosting Services Agreement (the "***Services Agreement***," and together with the HSA, the "***Agreements***") on or about June 19, 2024. Bitmain denies the remaining allegations in the first paragraph of the "Statement of Facts" section.

**6.**     Bitmain admits that (**a**) the parties entered into the HSA on or about June 19, 2024; (**b**) on or around November 25, 2024, Bitmain delivered its 2,700 Bitcoin mining servers (the "***Hosted Servers***") to the data center facility; (**c**) under the HSA, Orb was to supply a data center facility to host the Hosted Servers; (**d**) the HSA contains a confidentiality provision; and (**e**) copies of the first page and signature page of the HSA are attached to Orb's complaint. Bitmain denies any remaining allegations in the second paragraph of the "Statement of Facts" section.

**7.**     Bitmain admits that (**a**) the parties entered into the Services Agreement on or about June 19, 2024; (**b**) the Services Agreement sets out terms and conditions; (**c**) under the Services Agreement, Orb was to provide specified services to Bitmain; (**d**) the Services Agreement contains a confidentiality provision; and (**e**) copies of the first page and signature page of the Services Agreement are attached to Orb's complaint. Bitmain denies any remaining allegations in the third paragraph of the "Statement of Facts" section.

**8.**     Bitmain is without sufficient knowledge or information to form a belief as to the allegations in the fourth paragraph of the "Statement of Facts" section and, therefore, denies the same.

**9.** Bitmain admits that (**a**) the parties entered into the Agreements; (**b**) under the Agreements, Bitmain was to pay (i) a "Deposit" (as defined in the Agreements), (ii) a "Hosting Fee" (as defined in the Agreements) based on power consumption; and (iii) certain other amounts specified in the Agreements. Bitmain is without sufficient knowledge or information to form a belief as to the allegations in the fifth paragraph of the "Statement of Facts" section and, therefore, denies the same.

**10.** Bitmain admits the allegations in the sixth paragraph of the "Statement of Facts" section.

## Evidence of Breach

**11.** Bitmain denies each and every allegation in the first paragraph of the "Evidence of Breach" section. Specifically, Bitmain denies each and every allegation under: (1) the "Payment of Breaches" subheading; (2) the "Equipment Delivery Breaches" subheading; and (3) the "Technical and Operational Breaches" subheading.

**12.** Bitmain denies that Orb "continued to perform its obligations under the Agreements" as alleged in the second full paragraph in the "Evidence of Breach" section.

**13.** Bitmain denies the allegation in the third paragraph in the "Evidence of Breach" section.

## False Allegations

**14.** Bitmain admits its counsel sent a Notice of Withdrawal to Orb on or about April 3, 2025, based on Orb's breach of the Agreements by unauthorized self-mining using Bitmain's Hosted Servers. Bitmain denies all remaining allegations in the first paragraph under the "False Allegations" section.

**15.** Bitmain admits it demanded the return of all Bitcoin Orb improperly mined using Bitmain's equipment and expressed its intention to remove its property from Orb's facility on April 7, 2024. Bitmain denies all remaining allegations in the second paragraph under the "False Allegations" section.

**16.**     Bitmain denies the allegations in the third paragraph under the "False Allegations" section.

**17.**     Bitmain denies the allegations in the fourth paragraph under the "False Allegations" section.

## First Cause of Action: Breach of Contract

**18.**     Except as expressly admitted herein, Bitmain denies the allegations contained in the preceding paragraphs of Orb's complaint.

**19.**     Bitmain denies the allegations in the first paragraph under the "Breach of Contract" section.

**20.**     Bitmain denies the allegations in the second paragraph under the "Breach of Contract" section.

**21.**     Bitmain denies the allegations in the third paragraph under the "Breach of Contract" section.

**22.**     Bitmain denies the allegations in the fourth paragraph under the "Breach of Contract" section.

**23.**     Bitmain denies the allegations in the fifth paragraph under the "Breach of Contract" section.

## Second Cause of Action: Unjust Enrichment

**24.**     Except as expressly admitted herein, Bitmain denies the allegations contained in the preceding paragraphs of Orb's complaint.

**25.**     Bitmain denies the allegations in the first paragraph under the "Unjust Enrichment" section.

**26.**     Bitmain denies the allegations in the second paragraph under the "Unjust Enrichment" section.

**27.**     Bitmain denies the allegations in the third paragraph under the "Unjust Enrichment" section.

**28.**    Bitmain denies the allegations in the fourth paragraph under the "Unjust Enrichment" section.

**29.**    Bitmain denies the allegations in the fifth paragraph under the "Unjust Enrichment" section.

## Third Cause of Action: Declaratory Judgment

**30.**    Except as expressly admitted herein, Bitmain denies the allegations contained in the preceding paragraphs of Orb's complaint.

**31.**    Bitmain denies the allegations in the first paragraph under the "Declaratory Judgment" section.

**32.**    Bitmain denies the allegations in the second paragraph under the Declaratory Judgment" section.

**33.**    Bitmain denies the allegations in the third paragraph under the "Declaratory Judgment" section.

## Fourth Cause of Action: Preliminary & Permanent Injunctive Relief

**34.**    Except as expressly admitted herein, Bitmain denies the allegations contained in the preceding paragraphs of Orb's complaint.

**35.**    Bitmain denies the allegations in the first paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**36.**    Bitmain denies the allegations in the second paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**37.**    Bitmain denies the allegations in the third paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**38.**    Bitmain denies the allegations in the fourth paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**39.**    Bitmain denies the allegations in the fifth paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**40.**     Bitmain denies the allegations in the sixth paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**41.**     Bitmain denies the allegations in the seventh paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**42.**     Bitmain denies the allegations in the eighth paragraph under the "Preliminary and Permanent Injunctive Relief" section.

**Prayer For Relief**

**43.**     Bitmain denies that Orb is entitled to any relief requested in the "Prayer for Relief" section of its complaint.

## II. <u>BITMAIN'S FIRST AMENDED AFFIRMATIVE DEFENSES</u>

**1.**     Orb's complaint fails to set forth facts sufficient to state a claim upon which relief may be granted and fails to state facts sufficient to entitle Orb to the relief sought or any other relief whatsoever.

**2.**     Orb's claims are barred, in whole or part, due to Orb's prior material breaches of the Agreements.

**3.**     Orb's claims are barred, in whole or part, due to Orb's fraud.

**4.**     Orb's claims are barred, in whole or part, under the economic loss rule.

**5.**     Orb's claims are barred, in whole or part, under the doctrine of quasi-estoppel.

**6.**     Orb's claims are barred, in whole or part, under the doctrine of judicial estoppel.

**7.**     Orb's claims are barred, in whole or part, under the doctrine of equitable estoppel.

**8.**     Orb's claims are barred, in whole or part, due to Orb's implicit waiver.

**9.**     Orb's claims are barred, in whole or part, due to Orb's laches.

**10.**     Orb's claims are barred, in whole or part, because Orb has unclean hands.

**11.**     Orb's claims are barred, in whole or part, because Orb failed to mitigate its damages.

### III.  **BITMAIN'S FIRST AMENDED COUNTERCLAIMS**

**1.**     Bitmain is a corporation incorporated under the laws of the State of Georgia, with a business address located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076.

**2.**     Orb is a corporation organized and existing pursuant to the laws of the State of Delaware. The Delaware Secretary of State's website lists the following statutory agent for service of process: Corporation Service Company, at 251 Little Falls Drive, Wilmington, DE 19808.

**3.**     Zaniewski is, upon information and belief, an individual last known to reside in the State of California. Zaniewski is the CEO of Orb. Upon information and belief, Defendant Zaniewski at times uses the name Jamieson Hill.

### JURISDICTION AND VENUE

**4.**     Orb operates a data center in Matagorda County, Texas, located at 4947 County Road 126, Van Vleck, Texas 77482 (the "***Data Center Facility***"), which is where (a) Orb maintains its principal place of business, (b) a substantial part of the events or omissions giving rise to the claim occurred, and (c) a substantial part of property that is the subject of the action is situated. Accordingly, venue is proper in this District. 28 U.S.C. § 1391.

**5.**     This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1334(b), as the claims arise in or are related to the Orb's Chapter 11 bankruptcy case, No. 25-80363, pending in this Court, and have been referred to this Bankruptcy Court under the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012 (General Order 2012-6).

**6.**     Additionally, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because this Counterclaim asserts a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

**7.**     This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship because (**a**) Bitmain is a Georgia corporation with its principal place of business in Beijing, China, (**b**) Orb is a Delaware corporation with its principal place of business in Texas, and (**c**) Jamieson Zaniewski is a citizen of California.

**8.**     This Court has personal jurisdiction over Orb and Zaniewski pursuant to Federal Rule of Bankruptcy Procedure 7004 and the Fifth Amendment to the United States Constitution, as the Court may exercise nationwide service of process in this adversary proceeding, and both have sufficient minimum contacts with the United States such that the exercise of jurisdiction comports with due process and traditional notions of fair play and substantial justice.

**9.**     This Court has general jurisdiction over Orb because Orb is a corporation organized under the laws of Delaware with its principal place of business in Matagorda County, Texas, rendering it essentially at home in the United States, where it conducts continuous and systematic business activities, including operating the Data Center Facility.

**10.**    This Court also has general jurisdiction over Zaniewski because he serves as Orb's CEO and maintains continuous and systematic contacts with the United States through his management of Orb's U.S.-based operations.

**11.**    This Court has specific jurisdiction over Orb because the claims in this Counterclaim arise directly from Orb's purposeful contacts with the United States, including its execution and performance of contracts within the United States, its operation of the data center facility in Matagorda County, Texas, and its alleged wrongful acts—such as unauthorized access to and redirection of mining rewards from Bitmain's servers—committed within the United States.

**12.** Similarly, this Court has specific jurisdiction over Zaniewski because the claims arise from his purposeful acts within the United States, including directing Orb's operations in the United States, personally authorizing or participating in the alleged breaches of contract, theft of Bitcoin, and violations of court orders in Matagorda County, Texas, all of which are directly related to Bitmain's claims asserted herein.

## INTRODUCTION

**13.** In June 2024, Bitmain entered into agreements whereby Orb agreed to provide a data center facility to host 2,700 of Bitmain's Antminer S19 XP Hyd Bitcoin mining servers (the "***Hosted Servers***").

**14.** The Hosted Servers are specialized application-specific integrated circuit ("***ASIC***") devices designed to perform computational operations for validating Bitcoin transactions on the blockchain, generating revenue for Bitmain through block rewards and transaction fees.

**15.** Bitmain relied on Orb to provide a data center environment optimized for the Hosted Servers, including electrical power and reliable high-speed internet to ensure operational continuity. Additionally, Bitmain entrusted Orb with implementing physical measures to protect the Hosted Servers from damage, unauthorized access, and theft. In exchange for providing the Data Center Facility and specified services outlined in the colocation agreements, Bitmain agreed to pay Orb a hosting fee.

**16.** Under the terms of the agreements, Bitmain was entitled to receive all Bitcoin mined by the Hosted Servers, as determined by their contributed hash rate to Bitmain's designated mining pool. Since the Hosted Servers were powered on, however, Bitmain has been unable to manage or control them due to an unauthorized reconfiguration by Orb on or about November 26 or 27, 2024. Orb redirected the Hosted Servers' hash rate to a mining pool controlled by Orb and Zaniewski, diverting the computational output from Bitmain's benefit.

17.     Consequently, the Hosted Servers' hash rate, which was contractually obligated to mine Bitcoin for Bitmain, was misdirected to generate block rewards and transaction fees for wallets controlled by Orb and Zaniewski. This misappropriation enabled Orb and Zaniewski to illicitly retain the proceeds from the mined Bitcoin after liquidating the cryptocurrency through Zaniewski's personal exchange accounts.

18.     According to Orb's Statement of Financial Affairs, as of September 29, 2025, Orb has misappropriated at least 78 bitcoins from Bitmain through this scheme, worth more than $9,000,000.00 at Bitcoin's current value.



| BTC Sold | # Price at sell | NET USD value | Date | Point of Sale |
|---|---|---|---|---|
| 30 | 78000 | $2,340,000.00 | 2/25/2025 | AAVE |
| 1.5 | 94300 | $141,450.00 | 4/30/2025 | Coinbase |
| 3.1 | 94985 | $294,453.50 | 5/1/2025 | Coinbase |
| 1 | 97800 | $97,800.00 | 5/2/2025 | Coinbase |
| 5 | 109000 | $545,000.00 | 5/25/2025 | Coinbase |
| 1 | 110000 | $110,000.00 | 5/25/2025 | Coinbase |
| 2.75 | 109000 | $299,750.00 | 6/6/2025 | Coinbase |
| 1.57 | 108000 | $169,560.00 | 6/13/2025 | Coinbase |
| 0.229 | 109000 | $24,961.00 | 6/23/2025 | Coinbase |
| 2.29 | 109000 | $249,610.00 | 6/23/2025 | Coinbase |
| 0.46 | 108277 | $49,807.42 | 7/2/2025 | Coinbase |
| 0.594 | 110300 | $65,518.20 | 7/7/2025 | Coinbase |
| 1.36 | 110290 | $149,994.40 | 7/7/2025 | Coinbase |
| 0.428 | 116800 | $49,990.40 | 7/11/2025 | Coinbase |
| 0.426 | 117250 | $49,948.50 | 7/11/2025 | Coinbase |
| 0.287 | 122000 | $35,014.00 | 7/11/2025 | Coinbase |
| 2.459 | 121956 | $299,889.80 | 7/12/2025 | Coinbase |
| 3.08 | 121450 | $374,066.00 | 7/12/2025 | Coinbase |
| 2.14 | 116955 | $250,283.70 | 7/30/2025 | Coinbase |
| 1.72816455 | 114568.06 | $197,992.46 | 08/03/25 | Coinbase |
| 1.72816455 | 114556.8 | $197,973.00 | 08/03/25 | Coinbase |
| 1.72816455 | 114623 | $198,087.41 | 08/04/25 | Coinbase |
| 1.72816455 | 114625 | $198,090.86 | 08/04/25 | Coinbase |
| 66.5856582 | 109684.1678 | $6,389,240.65 | | |



Owner's name and address

**Bitmain**
Name

**900 Old Roswell Lakes Parkway**
Street

**Roswell**                 **GA**      **30076**
City                          State     ZIP Code

Description of the property

The Debtor holds 12 Bitcoin for
Bitmain as of 09/29/25.

¹ *See* Orb Energy Co.'s Amended Official Form 207 Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy, Cause No.25-8063, ECF No. 54, p. 12.

² *Id.* at 16.

19.     While the total extent of Orb and Zaniewski's theft has yet to be determined, ***one thing remains clear: Orb and Zaniewski have stolen Bitmain's property, gone to great lengths to conceal the extent of the theft, and made every effort to avoid returning those ill-gotten gains***.

20.     To this day, Orb and Zaniewski persist in illicitly diverting computational resources from Bitmain by operating Bitmain's Hosted Servers to mine Bitcoin, with the resulting block rewards and transaction fees redirected to a cryptocurrency wallet exclusively controlled by Orb and Zaniewski.

21.     Due to Orb's tortious conduct, on April 3, 2025, Bitmain notified Orb and Zaniewski that Bitmain was exercising its contractual right to withdraw the Hosted Servers from the Data Center Facility. Under the agreements' terms, Orb is required to allow Bitmain to remove its property, including the Hosted Servers, from the Data Center Facility. Orb and Zaniewski refused to honor this obligation and instead hold Bitmain's property (the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom) hostage, preventing Bitmain from putting the property to a productive use.

22.     Bitmain has demanded that Orb cease its tortious conduct, but Orb and Zaniewski continue to use Bitmain's property to enrich itself at Bitmain's expense.

## ALLEGATIONS

### A.     The Bitcoin Mining Industry

23.     Bitcoin is a crypto-asset that uses cryptographic principles to allow owners of Bitcoin to securely transact with each other and to prove ownership of Bitcoin via the Bitcoin blockchain, a decentralized public ledger.

24.     No single organization controls Bitcoin. Rather, the Bitcoin crypto-protocol maintains the Bitcoin blockchain and provides for new Bitcoins to enter the economy through a mechanism known as "mining." Individuals "mine" Bitcoin by using

sophisticated computer programs to perform complex, resource-intensive computations which validate past Bitcoin transactions. Once the transactions are validated, they are added to the Bitcoin blockchain.

25.     The mining process is competitive. The first miner to validate a block of transactions is rewarded with an amount of Bitcoin, while other miners get nothing for that block. Blocks are mined on average once every ten minutes. The current reward for validating a block of transactions is 3.125 Bitcoins. Bitcoin miners can either sell the Bitcoin for a fiat current, such as U.S. dollars, or hold the Bitcoin as an investment. At the current price of Bitcoin, which fluctuates significantly, the reward for mining a single block of Bitcoin is worth approximately $350,000.00 to $380,000.00.

26.     Because the computations required to mine Bitcoin are highly complex, miners typically use machines equipped with ASIC chips to stay competitive. These machines are custom-built to efficiently mine Bitcoin and cost thousands of dollars.

27.     To increase their profitability, miners often operate hundreds or even thousands of ASIC mining servers at a time in a "mining pool." If the mining pool is successful and receives a reward, that reward is divided among participants in the pool based on the computing power that each participant provided to the mining pool. Each ASIC mining server can only be connected to one mining pool at a time, so directing the computational power of the server to one mining pool necessarily prevents the mining server from being used to generate rewards in a different mining pool.

28.     Bitcoin mining, especially at a commercial scale, consumes significant amounts of electric power. Without a reliable source of electric power, ASIC miners cannot be put to a productive use.

29.     ASIC miners are sophisticated electronic devices. As such, they are vulnerable to damage from a variety of sources, such as water and moisture, heat, dust and debris, static electricity, and physical injury. To mitigate the risk of damage, ASIC miners are

typically stored in secured, climate-controlled data centers and operated by technicians with experience in the field.

**30.**     Bitmain is an industry-leading developer and manufacturer of high-quality ASIC miners. Although Bitmain frequently sells ASIC miners to individuals and organizations seeking to mine Bitcoin, it also uses its own ASIC miners to mine Bitcoin itself.

**B.     Bitmain Enters into the Agreements with Orb.**

**31.**     On June 19, 2024, Orb and Bitmain entered into the Hosting Sale Agreement (the "***HSA***") and Hosting Services Agreement (the "***Services Agreement***") (collectively, the "***Agreements***") wherein Orb was obligated to supply the Data Center Facility to host the Hosted Servers and to provide electricity and internet access sufficient to allow Bitmain to use the Hosted Servers to mine Bitcoin. True and correct copies of the HSA and Services Agreement are attached hereto as **Exhibit A** and **Exhibit B**, respectively.[3]

**32.**     Zaniewski signed the HSA on behalf of Orb.[4]

**33.**     On or about November 25, 2024, Bitmain delivered the Hosted Servers to the Data Center Facility.

**34.**     The Hosted Servers are capable of generating approximately 0.3 bitcoins per day based on current network difficulty, a current value of over $36,000.

**35.**     Bitmain owns the Hosted Servers and has the exclusive and absolute right to determine how to use the servers.[5]

**36.**     The Hosted Servers are sophisticated electronic devices that require a consistent flow of electric power and constant connection to the internet to function. Orb, as the

---

[3] The Agreements are part of this pleading for all purposes. Fᴇᴅ. R. Cɪᴠ. P. 10(c).

[4] Ex. A at 58, 83; Ex. B at 38, 47.

[5] Ex. A, Sch. B, § 5.1(a) at 40; Ex. B, § 8.1(a) at 24.

Hosting Provider, was responsible for providing electric power, an internet connection, physical security, and a suitable facility for the Hosted Servers.

37.     Bitmain, in turn, would provide the Hosted Servers and reap the rewards from all Bitcoin mined therefrom. In return, Bitmain agreed to pay Orb a monthly hosting service fee based on the amount of electricity the Hosted Servers consumed.

38.     The HSA made clear that Orb could not use the Hosted Servers to mine Bitcoin for itself:

> <u>Restrictions re BITMAIN Property</u>.  Under no circumstances will Hosting Provider [Orb] redirect the hash power of the Hosted Servers to its own mining pool or any mining pool not authorized in writing by BITMAIN, operate (power-on or power-off) the Hosted Servers without BITMAIN's written consent, . . . or take any other actions that may interfere with BITMAIN's legal and beneficial ownership, operation or monitoring of the Hosted Servers and other BITMAIN Property.[6]

39.     Similarly, Section 5.3 of Schedule B to the HSA stated in no uncertain terms that the "Hosting Provider shall not under any circumstances utilize[ ] the Hosted Servers for self-mining purpose."[7]

40.     Should Orb breach Section 5.3 of Schedule B to the HSA and mine Bitcoin for its own account, the Agreement requires Orb to "return the proceeds of the mining to BITMAIN within 7 (seven) calendar days."[8]

41.     Bitmain is also entitled to "immediately terminate all or part of this Agreement" if Orb engages in self-mining.[9] "Self-mining" refers to Orb using the Hosted Servers to mine Bitcoin for Orb.

---

[6] Ex. A, Sch. B, § 3.16 at 38.

[7] Ex. A, Sch. B, § 5.3 at 40.

[8] Ex. A, Sch. B, § 5.4 at 40.

[9] Ex. A, Sch. B, § 5.4(c) at 41.

**42.**    In executing the HSA, Defendants "grant[ed] to BITMAIN the right to enforce this Agreement by means of injunction, both mandatory (specific performance) and preventative, without the necessity of obtaining any form of bond or undertaking whatsoever."[10] Defendants further "waive[d] any claim or defense that damages may be adequate or otherwise preclude injunctive relief."[11]

**C.    Orb Breaches the HSA—and Steals Bitmain's Bitcoin.**

**43.**    Orb breached its obligations under the HSA.

**44.**    Bitmain delivered the Hosted Servers on or about December 1, 2024.

**45.**    Immediately after unloading and racking the Hosted Servers, Orb and Zaniewski accessed the Hosted Servers without authorization and reconfigured them to direct their hash power to a mining pool controlled by Orb and Zaniewski.

**46.**    As a result, instead of contributing hash rate to mine Bitcoin for Bitmain's benefit, as required under the Agreements, the Hosted Servers' contributed hash power resulted in proportional rewards being distributed to wallets controlled by Orb and Zaniewski.

**47.**    This, in turn, enabled Orb and, ultimately, Zaniewski, to retain the proceeds from the misappropriated Bitcoin after liquidating it through Zaniewski's personal cryptocurrency exchange accounts

**48.**    At no point were Orb and Zaniewski authorized to access the Hosted Servers, reconfigure the Hosted Servers, direct the hash power to a mining pool controlled by Orb and Zaniewski, or receive the mining rewards to wallets controlled by Orb and Zaniewski.[12]

---

[10] Ex. A, § 10.1 at 19.

[11] *Id.*

[12] Ex. A, Sch. B, §§ 3.16, 5.3 at 38, 40.

**49.**     Orb and Zaniewski abused the fact that Bitmain had entrusted its valuable property to their care by improperly restricting Bitmain's access to its Hosted Servers and refusing to return said property upon demand (even after being presented with a court order to do so).

**50.**     On or about March 7, 2025, while at Bitmain's Shenzhen, China offices, Zaniewski acknowledged that Hosted Servers were operational at the Data Center Facility.

**51.**     Zaniewski further admitted that Orb and Zaniewski retained possession of Bitcoin that Orb had mined using Bitmain's Hosted Servers, but Zaniewski refused to return the Bitcoin.

**52.**     At no time has Bitmain authorized Orb to operate its Hosted Servers, much less to use the servers to mine Bitcoin for Orb's benefit.

**53.**     Zaniewski has since confirmed, under oath, that Orb has been and is currently using Bitmain's Hosted Servers to mine Bitcoin for Orb's benefit.

**54.**     In doing so, Orb and Zaniewski have taken possession of at least 78 Bitcoin that lawfully belong to Bitmain, property worth more than $9 million dollars at the current value of Bitcoin.

**55.**     Bitmain's independent investigation has confirmed Zaniewski's admissions; Bitmain has analyzed data showing the mining pools to which its Hosted Servers are connected. This analysis shows that beginning in November 2024, thousands of Hosted Servers were connected to an unauthorized Bitcoin mining pool controlled exclusively by Orb that sends all mining rewards to a wallet controlled by Zaniewski.

**56.**     On March 28, 2025, Bitmain personnel inspected the Data Center Facility. During the inspection, Bitmain determined that Orb and Zaniewski had tampered with Hosted Servers by removing firmware and installing a third-party plug-in that allowed Orb to use the Hosted Servers to mine Bitcoin for Orb and Zaniewski's benefit.

57.     Orb and Zaniewski's redirection of the Hosted Servers' computational power constitutes a severe and continuous breach of the HSA, including Sections 3.16 and 5.3 of Schedule B to the Agreement, which expressly forbids Orb from using the Hosted Servers to mine Bitcoin for its own account.[13]

58.     Moreover, after Bitmain demanded that they cease self-mining, Orb and Zaniewski leveraged the fact they had physical possession of the Hosted Servers by attempting to extract payment from Bitmain.

59.     Orb and Zaniewski also sold the Bitcoin mined with the Hosted Servers and retained the proceeds of those sales.

60.     Orb and Zaniewski's conduct violates Section 3.6 of Schedule B to the HSA, which requires Orb to "ensure that the operation of the Data Center Facility, the conduct of the Hosting Provider's Representatives, and the provision of the Services is at all times in compliance with Applicable Laws."[14]

61.     Bitmain has repeatedly demanded that Orb and Zaniewski cease breaching the Agreements and case using the Hosted Servers to mine Bitcoin for their own benefit. Orb and Zaniewski, however, have refused to comply with its contractual obligations and continues to use Bitmain's Hosted Servers to enrich itself.

**D.    Orb Refused Bitmain's Lawful Demand to Withdraw the Hosted Servers.**

62.     Since December 2024, Bitmain has attempted to negotiate with Orb and Zaniewski in good faith, seeking Orb's agreement to cease its self-mining and return the Bitcoin it has unlawfully mined, so that Bitmain and Defendants might settle their dispute without Court involvement. Obviously, those negotiations failed.

---

[13] Ex. A, Sch. B, §§ 3.16, 5.3 at 38, 40.

[14] Ex. A, Sch. B, § 3.6 at 35.

**63.** Due to Orb's severe and continuing breaches of the HSA, on April 3, 2025, Bitmain notified Orb of its intent to withdraw the Hosted Servers pursuant to Section 5.1(b) of Schedule B to the Agreement, which provides that "BITMAIN may remove the BITMAIN Property [including the Hosted Servers] at any time from the Data Center Facility."[15]

**64.** Bitmain sent subsequent demands—all of which Orb and Zaniewski ignored—culminating in Bitmain sending its Reaffirmation of Termination on July 16, 2025. A true and correct copy of Bitmain's Reaffirmation of Termination is attached hereto as **Exhibit C.** To date, Orb and Zaniewski have adamantly refused to stop self-mining, return the Hosted Servers, or return the Bitcoin mined therefrom.

**65.** Orb has refused to comply with its obligations under the Agreements and has prevented Bitmain from removing the Hosted Servers from the Data Center Facility. In doing so, Orb is holding more around $16 million worth of property hostage and is preventing Bitmain from using the Hosted Servers to generate approximately 0.30 Bitcoins a day in mining revenue—worth approximately $36,000 at the current value of Bitcoin.

**E.      Orb Damages Bitmain's Property.**

**66.** Orb's actions pose a substantial risk of irreparable damage to Bitmain's Hosted Servers.

**67.** The Hosted Servers are advanced ASIC devices requiring specialized technical expertise for operation and routine maintenance. Pursuant to the Agreements, Bitmain was responsible for operations and maintenance of the Hosted Servers for at least the initial three-month period following their activation to ensure optimal performance and longevity.

---

[15] Ex. A, Sch. B, § 5.1(b) at 40.

68.     By accessing and operating the Hosted Servers without Bitmain's authorization and lacking the necessary technical proficiency, Orb significantly increases the likelihood of hardware degradation or failure. Furthermore, Orb's absence of expertise in maintaining ASIC-based Bitcoin mining equipment renders it incapable of performing necessary repairs or mitigating damage effectively.

69.     Each day Orb continues to operate the Hosted Servers without Bitmain's authorization, it heightens the risk of permanent damage to the ASIC hardware, potentially compromising their hash rate performance and rendering them incapable of achieving optimal operational efficiency

70.     On or about March 7, Zaniewski disclosed to a Bitmain representative that more than fifty of the Hosted Servers had exploded due to improper usage.

71.     Orb's actions also jeopardize the permanent loss of all Bitcoin illicitly mined. Bitcoin is custodied in digital wallets on the Bitcoin blockchain, identified by unique public addresses.

72.     To transfer Bitcoin between wallets, the sender must provide the recipient's public address, a cryptographically generated alphanumeric string analogous to an account identifier.

73.     If an incorrect address is entered or the Bitcoin is sent to a wallet incompatible with the Bitcoin protocol, the transaction debits the sender's wallet but fails to credit the recipient's wallet.

74.     Due to the decentralized and immutable nature of the Bitcoin blockchain, such erroneous transactions are irreversible, resulting in the Bitcoin being "burned"— permanently removed from circulation and irretrievable.

## COUNT I – BREACH OF CONTRACT
### (Against Orb)

**75.**     Bitmain adopts by reference the statements in the preceding paragraphs.[16]

**76.**     On June 19, 2024, Bitmain and Orb entered into the Agreements.

**77.**     Zaniewski signed the Agreements on behalf of Orb.

**78.**     The Agreements are a valid and enforceable contracts.

**79.**     Bitmain fully performed its obligations under the Agreements.

**80.**     Orb has materially breached its obligations under the Agreements by, among
other actions:

> a.  Unauthorized access to and reconfiguration of the Hosted Servers, redirecting
> their hash rate to a mining pool controlled by the Orb and Zaniewski, in
> violation of the Agreements, including Sections 3.16 and 5.3 of Schedule B to
> the HSA.
>
> b.  Denying Bitmain's designated Operation and Maintenance Hosting Provider
> access to the Data Center Facility  and Hosted Servers and otherwise failing
> to comply with the Agreements, including Sections 3.7 and 5.4 of Schedule B
> to the HSA.
>
> c.  Interfering with, interrupting, tampering with, or disabling Bitmain's access
> to the Monitoring Software, in violation of the Agreements, including Sections
> 3.19 and 5.6 of Schedule B to the HSA.
>
> d.  Refusing to grant Bitmain access to the Data Center Facility and the Hosted
> Servers, in violation of the Agreements, including Sections 3.20 and 5.4 of
> Schedule B to the HSA.
>
> e.  Utilizing the Hosted Servers to mine for Zaniewski and Orb's benefit and
> otherwise, in violation of the Agreements, including Sections 3.16, 5.3 and 5.4
> of Schedule B to the HSA.
>
> f.  Preventing Bitmain from removing the Hosted Servers from the Data Center
> Facility, in violation of the Agreements,  including Section 5.1(b) of Schedule
> B to the HSA.

---

[16] FED. R. CIV. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in
the same pleading or in any other pleading or motion.").

g. Refusing to return all Bitcoin Orb has mined using Bitmain's Hosted Servers, in violation of Section 5.4 of Schedule B to the HSA.

81.     Section 10.1 of the HSA "grants to BITMAIN the right to enforce this Agreement by means of injunction, both mandatory (specific performance) and preventative, without the necessity of obtaining any form of bond or undertaking whatsoever."[17]

82.     Upon information and belief, as a result of Orb's breaches of the Agreements, Bitmain has suffered damages of not less than $16 million.

83.     All conditions precedent have been performed or have occurred for Bitmain to recover from Orb for breach of contract.

### <u>COUNT II – UNJUST ENRICHMENT</u>
**(Against Zaniewski)**

84.     Bitmain adopts by reference the statements in the preceding paragraphs.[18]

85.     Zaniewski wrongfully secured a benefit that would be unconscionable for him to retain. *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Specifically, Orb and Zaniewski improperly retained the Bitcoin mined from the Hosted Servers (both of which rightfully belong to Bitmain) and the proceeds of Orb's improper sale of said Bitcoin (which also rightfully belong to Bitmain).

86.     Zaniewski obtained a benefit through fraud, duress, or the taking of an undue advantage. *Id.* (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

87.     Zaniewski, without Bitmain's knowledge or consent, directed the rewards from the Hosted Servers to a wallet owned and controlled exclusively by Orb and Zaniewski.

---

[17] Ex. A, § 10.1 at 19.

[18] FED. R. CIV. P. 10(c).

**88.**     Zaniewski abused the fact that Bitmain entrusted its valuable property to his and Orb's care by improperly restricting Bitmain's access to its own property and refusing to return said property upon demand.

**89.**     Further, Zaniewski sold the Bitcoin mined with the Hosted Servers and retained the proceeds of those sales.

**90.**     It would be unconscionable for Zaniewski to retain the benefits of his and Orb's wrongful acts, including the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom.

**91.**      Upon information and belief, as a result of Zaniewski's misdeeds, Bitmain has suffered damages of not less than $16 million.

### COUNT III – MONEY HAD AND RECEIVED
**(Against Zaniewski)**

**92.**     Bitmain adopts by reference the statements in the preceding paragraphs.[19]

**93.**     Bitmain alleges Orb and Zaniewski obtained money that, in equity and good conscience, belongs to Bitmain. Specifically, Orb and Zaniewski obtained the proceeds of Orb's improper and unsanctioned sale of Bitcoin mined from the Hosted Servers (which rightfully belong to Bitmain).

**94.**     As a result of Orb and Zaniewski's misdeeds, Bitmain has been deprived of the benefits of the Bitcoin mined using its own property, including the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom.

**95.**     Upon information and belief, as a result of Zaniewski's misdeeds, Bitmain has suffered damages of not less than $16 million.

---

[19] FED. R. CIV. P. 10(c).

## COUNT IV – CONVERSION
### (Against Zaniewski)

**96.**     Bitmain adopts by reference the statements in the preceding paragraphs.[20]

**97.**     Bitmain owns the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom.

**98.**     Zaniewski wrongfully acquired and exercised dominion and control over the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom.

**99.**     Orb and Zaniewski restricted Bitmain's physical access to the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom by excluding its representatives, despite the Agreements' mandate that Bitmain be given "unfettered access" to the site where the Hosted Servers are located.

**100.**     Furthermore, Zaniewski, without authorization, accessed the Hosted Servers and reconfigured their settings to redirect their hash rate to a mining pool controlled by the Zaniewski.

**101.**     Consequently, in violation of the Agreements, the Hosted Severs' computational output, intended to mine Bitcoin for Bitmain's benefit, was diverted, resulting in block rewards and transaction fees being allocated to cryptocurrency wallets controlled by Zaniewski.

**102.**     Zaniewski sold Bitcoin mined with the Hosted Servers through Zaniewski's personal cryptocurrency exchange accounts.

**103.**     This misappropriation enabled Zaniewski to retain the proceeds of the Bitcoin after liquidating it through Zaniewski's personal cryptocurrency exchange accounts.

**104.**     After selling the Bitcoin, Zaniewski transferred some of the proceeds to his personal bank account.

**105.**     After selling the Bitcoin, Zaniewski transferred some of the proceeds to his personal cryptocurrency wallets.

---

[20] FED. R. CIV. P. 10(c).

**106.** After selling the Bitcoin, Zaniewski caused Orb to use some of the proceeds to pay his personal credit cards.

**107.** After selling the Bitcoin, Zaniewski retained some of the proceeds in his personal cryptocurrency exchange accounts.

**108.** After selling the Bitcoin, Zaniewski transferred some of the proceeds to other accounts to conceal it from Bitmain.

**109.** Bitmain made multiple demands for the return of the  Hosted Servers and the Bitcoin mined therefrom and that Orb cease self-mining, but Zaniewski refused.

**110.** Bitmain has been deprived of the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom due to Zaniewski's misconduct and has suffered damages as a result.

**111.** Upon information and belief, as a result of Zaniewski's misdeeds, Bitmain has suffered damages of not less than $16 million.

**112.** Bitmain's injury resulted from Orb's and Zaniewski's malice or actual fraud which entitles Bitmain to exemplary damages under Texas Civil Practice & Remedies Code § 134.005(a)(1).

### COUNT V – HARMFUL ACCESS BY COMPUTER
#### TEX. CIV. PRACTICE & REM. CODE § 143.001 et seq.
**(Against Zaniewski)**

**113.** Bitmain adopts by reference the statements in the preceding paragraphs.[21]

**114.** "A person who is injured or whose property has been injured as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if the conduct constituted the violation was committed knowingly or intentionally."[22] "A person

---

[21] FED. R. CIV. P. 10(c).

[22] TEX. CIV. PRAC. & REM. CODE § 143.001.

commits an offense if the person knowingly accesses a computer, computer network, or computer system without effective consent of the owner."[23]

115.    "A person commits an offense if, with the intent to defraud or harm another or alter, damage, or delete property, the person knowingly accesses . . . a computer, computer network, or computer system without effective consent of the owner; or a computer, computer network, or computer system that is owned by . . . a business or other commercial entity engaged in a business activity[ ] in violation of . . . a contractual agreement to which the person expressly agreed" and did so "with the intent to obtain a file, data, or proprietary information stored in the computer, network, or system to defraud or harm another or alter, damage, or delete property."[24]

116.    Bitmain and its property have both been injured as a result of Zaniewski's knowing and intentional unauthorized and improper access of the Hosted Servers, including: (a) directing the hash-rate of the Hosted Servers to an unauthorized mining pool exclusively controlled by Zaniewski; and (b) installing unauthorized software (i.e., Foreman, Dashboard, and VNISH) rather than Bitmain's Monitoring Software, AntSentry, thereby depriving Bitmain from access and control over its own property.[25]

117.    At no point did Bitmain authorize, or otherwise consent to, Orb and Zaniewski directing the hash-rate of the Hosted Servers to a mining pool exclusively controlled by Orb and Zaniewski. Nor did Bitmain ever authorize Orb and Zaniewski to install Orb's preferred monitoring software—that, conveniently, denied Bitmain the ability to control its own property—on the computer network/computer system that operates the Hosted Servers. Indeed, Bitmain expressly and repeatedly demanded that Orb and Zaniewski cease their self-mining and to allow Bitmain to direct the hash-rate to its

---

[23] TEX. PENAL CODE § 33.02(a).

[24] *Id.* § 33.02(b-1).

[25] *See* TEX. CIV. PRAC. & REM. CODE § 143.001; TEX. PENAL CODE § 33.02(a).

own mining pool. Orb and Zaniewski refused and have taken overt actions to ensure that Bitmain cannot access (whether that be physically or remotely) its own property.

**118.** Orb and Zaniewski were aware that Bitmain did not consent to their conduct at the time due to Bitmain's repeated demands to cease all self-mining and to allow Bitmain to install AntSentry. Orb and Zaniewski ignored Bitmain's demands, which forced Bitmain to seek injunctive relief in Texas state court (which Orb and Zaniewski also ignored).

**119.** Bitmain is entitled to its actual damages and reasonable attorney's fees and costs as a result of Zaniewski's misdeeds.[26]

**120.** Upon information and belief, as a result of Zaniewski's violation under Chapter 33, Penal Code, Bitmain has suffered damages of not less than $16 million.

## COUNT VI – COMPUTER FRAUD & ABUSE ACT
### 18 U.S.C. § 1030
#### (Against Zaniewski)

**121.** Bitmain adopts by reference the statements in the preceding paragraphs.[27]

**122.** Bitmain brings a claim against Zaniewski under the Computer Fraud and Abuse Act, codified at 18 U.S.C. § 1030.[28]

**123.** "Any person who suffers damage or loss by reasons of a violation of this section may maintain a civil violation against the violator to obtain compensatory damages and injunctive relief or other equitable relief."[29]

**124.** Due to Orb and Zaniewski's unauthorized access of, interference with, and reconfiguration of Bitmain's Hosted Servers beginning in November 2024 and

---

[26] TEX. CIV. PRAC. & REM. CODE § 143.002.

[27] FED. R. CIV. P. 10(c).

[28] 18 U.S.C. § 1030.

[29] *Id.* § 1030(g).

continuing to the present, Bitmain has suffered extensive damages, including the loss of over $5 million worth of Bitcoin that were stolen by Orb and Zaniewski.

**125.**   Orb and Zaniewski knowingly and with the intent to defraud, accessed the Hosted Servers without authorization and diverted the mining proceeds of the Hosted Servers (i.e., the mined bitcoin) which are Bitmain's personal property and have significant value.[30]

**126.**   The Hosted Servers meet the definition of "protected computer" as set forth in 18 U.S.C. § 1030(e)(1)–(2).[31]

**127.**   Upon information and belief, as a result of Zaniewski's violation of the Computer Fraud and Abuse Act, Bitmain has suffered damages of not less than $16 million.

### COUNT VII – TEXAS THEFT LIABILITY ACT
**(Against Zaniewski)**

**128.**    Bitmain adopts by reference the statements in the preceding paragraphs.[32]

**129.**   Bitmain brings this action against Zaniewski under the Texas Theft Liability Act for an unlawful appropriation under Texas Penal Code § 31.03.[33]

**130.**   Bitmain was entitled to possession of the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom.

**131.**   Zaniewski unlawfully appropriated Bitmain's personal property, including the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom, in violation of Texas Penal Code § 31.03.[34]

**132.**   Specifically, Zaniewski unlawfully appropriated (**a**) Bitmain's hydro-cooling containers, (**b**) Bitmain's Hosted Servers, and (**c**) the Bitcoin mined therefrom.

---

[30] *Id.* § 1030(a)(4).

[31] *Id.* §§ 1030(e)(1)–(2).

[32] FED. R. CIV. P. 10(c).

[33] TEX. PENAL CODE § 31.03.

[34] *See id.*

**133.**   This unlawful appropriation of the hydro-cooling containers, Hosted Servers, and the Bitcoin mined therefrom was made with the intent to deprive Bitmain of its property.

**134.**   Zaniewski's intentional, wrongful conduct caused injury to Bitmain, which resulted in the loss of millions of dollars' worth of Bitcoin and, in particular, the loss of over $9 million in proceeds from the sale of Bitmain's Bitcoin.

**135.**   Upon information and belief, as a result of Zaniewski's violation of Texas Penal Code § 31.03, Bitmain has suffered damages of not less than $16 million.

**136.**   Bitmain's injury resulted from Orb and Zaniewski's malice or actual fraud which entitles Bitmain to exemplary damages under Texas Civil Practice & Remedies Code § 134.005(a)(1).

## ATTORNEYS' FEES

**137.**   Bitmain adopts by reference the statements in the preceding paragraphs.[35]

**138.**   Bitmain seeks to recover its attorneys' fees under the Agreements, which provides that "[t]he breaching Party shall bear the attorneys' fees, costs, and arbitration fees of the non-breaching Party."[36]

**139.**   Bitmain further seeks to recover its attorney's fees under the Texas Civil Practices and Remedies Code.[37]

**140.**   Bitmain seeks recovery of attorney's fees under any other applicable law.

**141.**   All conditions precedent have been performed or have occurred for Bitmain to recover its attorney's fees.

**142.**   Bitmain seeks recovery of all costs incurred herein.

---

[35] FED. R. CIV. P. 10(c).

[36] Ex. A, § 13.5(g) at 22; Ex. B, § 16.6(g) at 35.

[37] TEX. CIV. PRAC. & REM. CODE §§ 38.001–.006.

## RESERVATION OF RIGHTS REGARDING COUNTERCLAIMS

143.    Bitmain expressly reserves its rights with respect to the causes of action asserted herein. Out of an abundance of caution and to avoid any action that could be construed as a violation of the automatic stay under 11 U.S.C. § 362(a), as asserted by counsel for Orb,[38] Bitmain is not presently asserting any new causes of action against Orb in this First Amended Answer, Affirmative Defenses, and Counterclaim. While Bitmain disagrees with Orb's position that the automatic stay applies to this adversary proceeding or that removal of the state court action to this Court violated the stay, Bitmain has limited its cause of action against Orb to the breach of contract claim originally asserted in the state court proceeding prior to removal.

144.    However, to comply with this Court's *Order Setting Rule 7016 Conference, Requiring Rule 7026 Meeting, Establishing Procedures for Discovery Disputes, and Emphasizing Applicability of Certain Federal Rules of Civil Procedure as Made Applicable by the Federal Rules of Bankruptcy Procedure* [ECF No. 4], particularly paragraphs 5 and 10 thereof, which require amendments to answers to meet the standards of Federal Rule of Civil Procedure 8 (as made applicable by Federal Rule of Bankruptcy Procedure 7008), Bitmain must also amend its counterclaims. Pursuant to Federal Rules of Civil Procedure 7(a) and 13 (as made applicable by Federal Rules of Bankruptcy Procedure 7007 and 7013), counterclaims are not standalone pleadings but must be asserted as components of an answer; therefore, Bitmain has amended its counterclaim to include new causes of action against Zaniewski only.

145.    Bitmain reserves the right to amend this pleading further to assert each and every new cause of action against Orb upon a ruling from this Court confirming that

---

[38] Despite this Court's order [ECF No. 4] requiring the parties to "conduct a meeting under Fed. R. Civ. P. Rule 26(f), as made applicable by Fed. R. Bankr. 7026," Orb's counsel refused to participate in the Rule 26(f) conference, stating, "the case is stayed as to the debtor - your removal likely violated the stay - regardless, removal is not a back door to the stay not applying."

the automatic stay does not apply to this adversary proceeding, without waiver or abandonment of any such claims.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Bitmain respectfully requests a judgment granting Bitmain the relief requested and awarding all damages, in an amount proved at trial, including:

**A.** Actual damages;

**B.** Exemplary damages;

**C.** Injunctive Relief;

**D.** Prejudgment interest;

**E.** Post-judgment interest;

**F.** Reasonable and necessary attorney's fees, incurred in bringing this action;

**G.** Costs of court; and

**H.** Such other and further relief as the Court may deem just, equitable, and proper.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Jacob Sparks*
     **JACOB SPARKS**
     Texas Bar No. 24066126
     Email: Jacob.Sparks@NelsonMullins.com
     **XENNA K. DAVIS**
     Texas Bar No. 24132037
     Email: Xenna.Davis@NelsonMullins.com
     **NELSON MULLINS RILEY & SCARBOROUGH, LLP**
     5830 Granite Parkway, Suite 1000
     Plano, Texas 75024
     Tel: (469) 484-4758
     Fax: (469) 828-7217

     **KASI CHADWICK**
     Texas Bar No. 24087278
     Email: Kasi.Chadwick@NelsonMullins.com
     **MIRANDA GRANCHI**
     Texas Bar No. 24120862
     Email: Miranda.Granchi@NelsonMullins.com
     **NELSON MULLINS RILEY & SCARBOROUGH, LLP**
     1111 Bagby Street, Suite 2100
     Houston, Texas 77002
     Tel: (346) 646-3221
     Fax: (346) 241-3748

     *Attorneys for Plaintiff*
     *Bitmain Technologies Georgia Limited*