**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Orb Energy Co.,** | § | **Case No. 25-80363** |
| | § | |
| *Debtor.* | § | |
| | § | |
| | § | |
| | § | |
| **Orb Energy Co.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Adv. No. 25-08003** |
| | § | |
| **Bitmain Technologies Georgia Limited,** | § | |
| | § | |
| *Defendant,* | § | |
| | § | |
| | § | |
| **Bitmain Technologies Georgia Limited,** | § | |
| | § | |
| *Counter-Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Orb Energy Co. and Jamieson Zaniewski a.k.a. Jamieson Hill,** | § | |
| | § | |
| *Counter-Defendants.* | § | |
| | § | |

**BITMAIN TECHNOLOGIES GEORGIA LIMITED'S RESPONSE IN
OPPOSITION TO JAMIESON ZANIEWSKI'S MOTION FOR ABSTENTION**

1

Defendant and Counter-Plaintiff Bitmain Technologies Georgia Limited ("***Bitmain***") responds to Counter-Defendant Jamieson Zaniewski's ("***Zaniewski***") Motion for Abstention under 28 U.S.C. § 1334(c) [ECF No. 10] (the "***Motion***").

## I.   <u>INTRODUCTION</u>

1.     On September 19, 2025, Zaniewski filed the Motion seeking abstention of Bitmain's third-party claims against him under 28 U.S.C. § 1334(c). [ECF No. 10]. The Motion is an effort by Zaniewski to escape this Court's jurisdiction and return to the same state court where he and Orb Energy Co. ("***Debtor***") repeatedly defied court orders, concealed information, and obstructed Bitmain's attempts to recover its stolen property. Further, this position runs directly contrary to their prior arguments in state court where Debtor and Zaniewski argued that the automatic stay applied to Bitmain's claims against Zaniewski because "Bitmain's claims against Mr. Zaniewski are inextricably intertwined with its claims against Orb" and Bitmain's "claims against Mr. Zaniewski arise from the same factual and legal basis and thus they are inextricably intertwined." [ECF No. 3-43, p. 2; *see also* ECF No. 3-45, p. 2 ("[T]here is no question that these claims are inextricably intertwined for the purposes of the automatic stay.")].

2.     Mandatory abstention under § 1334(c)(2) is categorically unavailable because at least three of the statutory requirements have not been met. First, Bitmain's First Amended Answer, Affirmative Defenses, and Counterclaim asserts a cause of action under the Computer Fraud and Abuse Act (18 U.S.C. § 1030)—a claim arising under federal law and providing an independent basis for federal jurisdiction under 28 U.S.C. § 1331. The Court also has diversity jurisdiction over the parties, another independent basis for federal jurisdiction under § 1331.  Second, Zaniewski has failed to show that Bitmain's claims could be timely adjudicated in state court. The state court action has been effectively paralyzed for months due to Debtor and Zaniewski's

violations of the court's orders and the automatic stay. These violations left the case far from trial-ready and restarting the litigation would only compound delay. In contrast, this Court is already deeply familiar with the parties, facts, and issues and is best positioned to efficiently resolve this matter in a single coordinated forum. Third, because Zaniewski has failed to prove that this is a non-core proceeding.

**3.**     Zaniewski is also not entitled to permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand. Far from serving the interests of justice or comity, remand would inhibit the efficient administration of the bankruptcy estate and fracture this litigation involving Bitmain's claims against Debtor, all of which are based on actions taken by Debtor through Zaniewski. The overlapping factual and legal issues—particularly those involving the newly asserted federal claim—are most efficiently resolved in a single forum.

**4.**     The Motion is not about efficiency, comity, or fairness—it is a litigation tactic by Zaniewski designed to buy more time and avoid the consequences of his misconduct. The law and equities point in one direction: this Court should retain jurisdiction and deny the Motion.

## II.     RELEVANT FACTS

### A.     Debtor and Zaniewski's Theft and Unauthorized Bitcoin Mining.

**5.**     This adversary proceeding originates from state court litigation in the 130th Judicial District of Matagorda County, Texas (the "***State Court***").

**6.**     On June 19, 2024, Debtor and Bitmain entered into the Hosting Sale Agreement (the "***HSA***") and Hosting Services Agreement (the "***Services Agreement***") (collectively, the "***Agreements***") wherein Debtor was obligated to supply a data center facility to host the Bitmain's 2,700 Bitcoin mining servers (the "***Hosted Servers***")—valued in excess of $5.5 million—and to provide electricity and

3

internet access sufficient to allow Bitmain to use the Hosted Servers to mine Bitcoin.[1] Zaniewski, Debtor's CEO, negotiated and signed the Agreements on behalf of Debtor.[2]

**7.**     On or around November 25, 2024, Bitmain delivered the Hosted Servers to the data center facility located at 4947 County Road 126, Van Vleck, Texas (the "***Data Center Facility***").[3]

**8.**     Immediately after unloading and racking the Hosted Servers, however, Debtor and Zaniewski accessed the Hosted Servers without authorization[4] and reconfigured them to direct their hash power to a mining pool controlled by Debtor and Zaniewski. As a result, instead of contributing hash rate to mine Bitcoin for Bitmain's benefit, as required under the Agreements, the Hosted Servers' contributed hash power resulted in proportional rewards being distributed to wallets controlled by Debtor and Zaniewski.[5] This, in turn, enabled Debtor and, ultimately, Zaniewski, to retain the proceeds from the misappropriated Bitcoin after liquidating it through Zaniewski's personal cryptocurrency exchange accounts.[6]

**9.**     Since at least November 26 or 27, 2024, Debtor and Zaniewski have unlawfully directed the hash power from Bitmain's Hosted Servers to mine Bitcoin for Debtor's benefit without Bitmain's consent, resulting in the theft[7] of Bitcoins worth $7 million to

---

[1] Appx. at 0001 (HSA); Appx. at 0064 (Services Agreement).

[2] Appx. at 0058, 0063 (HSA at 58, 63); Appx. at 0101, 0110 (Services Agreement at 38, 47).

[3] Appx. at 0195 (Zaniewski Depo. Tr. Vol. 1 at 106:02–05); Appx. at 0210–12 (Smith Depo. Tr. at 37:13–15, 38:20–39:09); Appx. at 0243 (Sept. 30, 2025 Bankr. Hr'g Tr. at 54:07–09).

[4] *See* TEX. PENAL CODE § 33.02 (Breach of Computer Security); Appx. at 0235–36 (Zaniewski Depo. Tr. Vol. 2 at 329:18–330:12).

[5] Appx. at 0168–69 (TI Hr'g Tr. Vol. 1 at 13:23–14:07); Appx. at 0196–98 (Zaniewski Depo. Tr. Vol. 1 at 109:02–13, 124:25–125:05); Appx. at 0213–14 (Smith Depo. Tr. at 58:04–17, 96:12–14); Appx. at 0244 (Sept. 30, 2025 Bankr. Hr'g Tr. at 61:03–18).

[6] Appx. at 0171–75 (TI Hr'g Tr. Vol. 1 at 85:10–89:24); Appx. at 0244 (Sept. 30, 2025 Bankr. Hr'g Tr. at 61:03–18).

[7] *See* TEX. CIV. PRAC. & REM. CODE § 134.002(2) (definition of "theft" in Texas Theft Liability Act).

$11 million based on current market values.[8] While the total extent of Debtor and Zaniewski's theft has yet to be determined, one thing remains clear: Debtor and Zaniewski have (without any apparent remorse) stolen Bitmain's property, gone to great lengths to conceal the extent of the theft, and made every effort to avoid returning those ill-gotten gains.

**10.**     Debtor's conversion of Bitmain's Hosted Servers and the Bitcoin mined therewith was a direct breach of the express terms of the Agreements, providing Bitmain the right to immediately terminate the Agreements.[9]

**11.**     On December 12, 2024, March 27, 2025, and April 3, 2025, Bitmain notified Debtor of its breach of Sections 3.16 and 5.4 of Schedule B of the HSA (among other breaches) and demanded that Debtor and Zaniewski cease stealing Bitmain's Bitcoin, allow Bitmain to direct its Hosted Servers' contributed hash power, and either (**a**) return the stolen Bitcoin, or (**b**) issue a new invoice for amounts purportedly owed under the HSA.[10]

**12.**     Debtor and Zaniewski, however, did none of those things; instead, Debtor and Zaniewski disconnected Bitmain's Monitoring Software on the Hosted Servers and installed other software,[11] continued to deny Bitmain's Operations and Maintenance

---

[8] Appx. at 0171–75 (explaining that at least fifty Bitcoin were mined by the time of the April 28th Temporary Injunction Hearing) (TI Hr'g Tr. Vol. 1 at 85:10–89:24).

[9] Appx. at 0038, 0040–41 (HSA, Sch. B, §§ 3.16, 5.4 at 38, 40–41).

[10] Appx. at 0158 (Notice of Breach, dated Dec. 12, 2024); Appx. at 0159–60 (Notice of Breach, dated Mar. 27, 2025); Appx. at 0161 (Notice of Withdrawal).

[11] Appx. at 0039 (entitling Bitmain to have Monitoring Software on the Hosted Servers) (HSA, Sch. B, § 3.19 at 39); Appx. at 0005 (defining "Monitoring Software") (HSA, § 1.1 at 5); Appx. at 0252–53 (admitting that Debtor disconnected the Monitoring Software—AntSentry) (Oct. 2, 2025 Bankr. Hr'g Tr. at 51:11–52:08); Appx. at 0227–28 (admitting that Debtor refused to allow Bitmain to install AntSentry and instead installed "Foreman and Dashboard in order to monitor") (Zaniewski Depo. Tr. Vol. 2 at 243:20–244:18); Appx. at 0250–51 (admitting that Debtor installed "Vnish" another software on the Hosted Servers without Bitmain's permission) (Oct. 2, 2025 Bankr. Hr'g Tr. at 7:16–8:02).

Hosting Provider access to the Data Center Facility,[12] despite repeated requests for immediate access,[13] and continued to use Bitmain's Hosted Servers to mine millions of dollars' worth of Bitcoin[14] that was directed to a wallet controlled by Zaniewski.[15] Accordingly, Bitmain terminated the HSA no later than July 16, 2025.[16]

> **B.    State Court Proceedings.**

**13.**    Debtor and Zaniewski's theft and unauthorized Bitcoin mining ultimately resulted in Bitmain filing suit for breach of contract and an emergency motion for temporary restraining order and temporary injunction against Debtor and Zaniewski on April 8, 2025. [ECF Nos. 3-2, 3-3].

**14.**    That same day, at 1:00 p.m., the State Court issued the *Temporary Restraining Order* ("***TRO***") against Debtor and Zaniewski. [ECF No. 3-6]. The State Court then issued the Amended Temporary Restraining Order ("***Amended TRO***") on April 10, 2025 at 10:15 a.m. [ECF No. 3-8]. Both the TRO and Amended TRO prohibited Debtor and Zaniewski from "selling, transferring, or otherwise disposing" of any Bitcoin mined from Bitmain's Hosted Servers or the proceeds thereof. [ECF Nos. 3-6, 3-8].

**15.**    Despite the Amended TRO's express prohibition of any expenditures of Bitmain's Bitcoin, Debtor and Zaniewski nevertheless sold $670,000.00 in Bitcoin

---

[12] Appx. at 0264 (admitting that Debtor permanently banned Bitmain's Operation and Maintenance Provider from the Data Center Facility) (Oct. 8, 2025 Bankr. Hr'g Tr. at 108:11–14); Appx. at 0168–69, 0170 (TI Hr'g Tr. Vol. 1 at 13:11–14:07, 61:11–18).

[13] Appx. at 0168–69, 0170, 0175–78 (TI Hr'g Tr. Vol. 1 at 13:11–14:07, 61:11–18, 89:25–92:8); Appx. at 0159–60 (Notice of Breach, dated Mar. 27, 2025); Appx. at 0161–62 (Notice of Withdrawal).

[14] Appx. at 0171–72 (TI Hr'g Tr. Vol. 1 at 85:10–86:22); Appx. at 0199 (Zaniewski Depo. Tr. Vol. 1 at 160:17–24). *But see* Appx. at 0254 (admitting that the Bitcoin sold and held reflected on Debtor's Statement of Financial Affairs filed August 20, 2025 was incorrect) (Oct. 2, 2025 Bankr. Hr'g Tr. at 72:05–16).

[15] Appx. at 0168–69, 0171–72 (TI Hr'g Tr. Vol. 1 at 13:23–14:07, 85:10–86:22); Appx. at 0196 (Zaniewski Depo. Tr. Vol. 1 at 109:02–13); Appx. at 0213–14 (Smith Depo. Tr. at 58:04–17, 96:12–14); Appx. at 0244 (Sept. 30, 2025 Bankr. Hr'g Tr. at 61:03–18); Appx. at 0260–61 (Oct. 8, 2025 Bankr. Hr'g Tr. at 102:15–103:04).

[16] Appx. at 0180 (Reaffirmation of Contract Termination).

during the pendency of the TRO and used some of the proceeds for unauthorized purposes.[17] Moreover, Zaniewski set up a new wallet so he could hide the Bitcoin in the original wallet.[18]

**16.**     Unbeknownst to Bitmain at that time, the day before Bitmain filed suit and moved for emergency injunctive relief (April 7), Debtor had initiated a separate suit against Bitmain in the same State Court, alleging breaches of the Agreements. [ECF No. 3-1]. The parties agreed to consolidate the actions. [ECF No. 3-14].

**17.**     On April 28 and 29, 2025, the State Court held a hearing on Bitmain's application for temporary injunction and ultimately granted the application and signed the *Temporary Injunction* on May 6, 2025 at 11:48 a.m. (the "***TI***"). [ECF No. 3-19]. The TI, among other things, allowed for certain operational expenses to be paid as listed therein and expressly required Debtor to allow Bitmain access to the Data Center Facility, access to Bitmain's property, and to permit Bitmain to install AntSentry monitoring software so that Bitmain could properly monitor its property. *Id.* at 2–4.

**18.**     The TI was set to expire on Saturday, July 5, 2025. *Id.* at 4. On July 1, Debtor and Zaniewski, together, moved to extend the TI and misrepresented to the State Court that the parties were nearing settlement, resulting in the State Court entering an *ex parte* order on July 2, 2025, extending the TI without giving Bitmain an opportunity to respond. [ECF Nos. 3-22, 3-26].

---

[17] Appx. at 0121, 0127 (showing a $25,000 "loan" to "Jamie Z" on April 11, 2025 and a $80,004 beginning balance of "loans to officer," the issuance of which is not recorded in Orb's General Ledger nor any evidence of repayment) (General Ledger at ORB-000071, 77); Appx. at 0226 ("**Q**. How did you take that loan? . . . **A**. I believe it was just a transfer of bank accounts.") (Zaniewski Depo. Tr. Vol. 2 at 236:06–09).

[18] Appx. at 0229 (admitting that he changed the wallet holding all Bitcoin mined using the Hosted Servers on April 10 (the same day the State Court entered the Amended TRO)) (Zaniewski Depo. Tr. Vol. 2 at 310:07–20); *see also* Appx. at 0261–63 (Oct. 8, 2025 Bankr. Hr'g Tr. at 103:20–105:11).

**19.**     Bitmain then filed its *Motion for Reconsideration of Temporary Injunction Extension* [ECF No. 3-28], and the State Court held a hearing on July 14, 2025 [ECF No. 3-29]. After hearing Zaniewski and Debtor's arguments about why their refusal to comply with the TI was justified by ostensible ambiguities in the TI's language, the State Court entered the *Order Clarifying Temporary Injunction* (the "**Order Clarifying TI**") [ECF No. 3-34] on July 24 at 4:14 p.m. to make it clear that Zaniewski and Debtor must comply with the TI as the Court originally intended.

**20.**     The Order Clarifying TI specifically required Debtor to produce "all wallet addresses where any Bitcoin mined by Debtor using Bitmain's hosted servers has been stored." *Id.* at 30. Instead, Debtor and Zaniewski disclosed only a single wallet used after April 11, 2025, while refusing to identify earlier wallets.[19] Tellingly, Zaniewski only recently admitted at this deposition that he changed the wallet holding all Bitcoin mined using the Hosted Servers on April 10 (the same day the State Court entered the Amended TRO) and then again on the day that Debtor filed for bankruptcy.[20]

**21.**     The Order Clarifying TI further required Debtor to provide Bitmain unredacted Coinbase reports showing all transfers of any Bitcoin mined with the Hosted Servers. *Id.* Yet, Debtor and Zaniewski failed to provide Coinbase mining reports for the following key dates: June 30, July 1, and July 9–12, 2025.[21] These are critical dates because, upon information and belief, Zaniewski violated the State Court's orders by selling Bitcoin belonging to Bitmain on or around those dates, in advance of key hearings in the State Court litigation.

**22.**     Debtor and Zaniewski's omissions of wallet addresses and transactions during key periods were intended to prevent Bitmain from uncovering the method and extent

---

[19] *See* Appx. at 0140 (Letter re Wallet Address).

[20] Appx. at 0229–34 (Zaniewski Depo. Tr. Vol. 2 at 310:07–315:01).

[21] *See* Appx. at 0181–83 (Email Request for Missing Coinbase Records).

of Debtor and Zaniewski's theft. Ultimately, Debtor and Zaniewski's refusal to identify all wallets and Coinbase reports concealed the location of mined Bitcoin, concealed how Debtor and Zaniewski were moving the Bitcoin, and prevented Bitmain from calculating the amount of Bitcoin stolen by Debtor and Zaniewski.[22] To date, Bitmain still has no way to calculate how much Bitcoin has been stolen.

23.     During the injunction period, Debtor and Zaniewski continued violating the State Court's orders,[23] first necessitating the filing of *Bitmain's Emergency Motion for Issuance of a Show Cause Order, Motion for Contempt, and Motions for Sanctions* on April 10, 2025 (the "**OSC Motion**") [ECF No. 3-11] and then the filing of *Bitmain's Emergency Motion to Enforce Court Orders, Request for Sanctions and Application for Special Writ* on August 4, 2025 (the "**Motion to Enforce**") [ECF No. 3-39].

24.     Shortly before the hearing on the OSC Motion and Motion to Enforce set for August 11, 2025, at 9:00 a.m. [ECF Nos. 3-36, 3-40], Debtor commenced this bankruptcy proceeding on August 5. [*See* ECF No. 3-42].

25.     Afterwards, on August 6, Debtor and Zaniewski argued to the State Court that the automatic stay applied to Bitmain's claims against Zaniewski because "Bitmain's claims against Mr. Zaniewski are inextricably intertwined with its claims against Orb" and Bitmain's "claims against Mr. Zaniewski arise from the same factual and legal basis and thus they are inextricably intertwined." [ECF No. 3-43, p. 2; *see also*

---

[22] By refusing to provide this information, Debtor and Zaniewski prevent public blockchain tracing.

[23] *Compare* Appx. at 0267, 0270 (showing at least $60,000 in "finance expenses" never approved under the injunction and later removed from the ledger entirely by Debtor and Zaniewski, suggesting manipulation), *with* ECF No. 3-19 (TI ¶ 2(b)) (allowing only certain operational expenses to be paid as listed therein); Appx. at 0272, 0290, 0296–97, 0299, 0302, 0305, 0307, 0309, 0311, 0313 (showing thousands of dollars paid on account of unaccounted receipts and payroll); *compare* Appx. at 0133–34 (reflecting Bitcoin sales and associated deposit of funds) (General Ledger at ORB-000083–84), *with* Appx. at 0135–39, 0154–56 (reflecting sale of Bitcoin) (Coinbase Accounting at ORB-000001–5, 19–21) *and* Appx. at 0141–53 (reflecting Bitcoin moving from wallet for alleged sales) (Coinbase Accounting at ORB-000006–18).

ECF No. 3-45, p. 2 ("[T]here is no question that these claims are inextricably intertwined for the purposes of the automatic stay.")].

**26.**     On August 11, Bitmain removed the State Court action to this Court, initiating this adversary proceeding. [ECF No. 1].

### C.     Bitmain's First Amended Counterclaims Against Zaniewski.

**27.**     On October 17, 2025, Bitmain filed its First Amended Answer, Affirmative Defenses, and Counterclaim [ECF No. 14]. Bitmain asserts the following claims against Zaniewski: (1) unjust enrichment, (2) money had and received, (3) conversion, (4) negligence, (5) violation of the Texas Harmful Access by Computer Act, (6) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and (7) violation of the Texas Theft Liability Act. *Id.* at 28.

### III.     ARGUMENT AND AUTHORITIES

### A.     Zaniewski Is Not Entitled To Mandatory Abstention.

**28.**     Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2). 28 U.S.C. § 1334(c)(2). The Fifth Circuit has interpreted § 1334(c)(2) to require all of the following elements: (1) timely motion for mandatory abstention; (2) claim has no independent basis for federal jurisdiction, other than the bankruptcy jurisdiction statute; (3) claim is a non-core proceeding; (4) an action has been started in state court; and (5) the action can be adjudicated timely in state court. *See In re Moore*, 739 F.3d 724, 728–29 (5th Cir. 2014); *In re Rupp & Bowman*, 109 F.3d 237, 239 (5th Cir. 1997).

**29.**     The party seeking abstention bears the burden of proving each element by a preponderance of the evidence, and failure to establish any one element precludes mandatory abstention. *See, e.g.*, *In re SBMC Healthcare, LLC*, 519 B.R. 172, 190 (Bankr. S.D. Tex. 2014) ("Because the Plaintiffs have failed to satisfy all [ ] elements necessary to prove up mandatory abstention, this Court declines to abstain under 28

U.S.C. § 1334(c)(2).”); *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003). Here, Zaniewski is not entitled to mandatory abstention because at least three of the elements are absent. The paragraphs below discuss elements 2 and 5. Element 3 is discussed *infra* at Section C, paragraph 47.

**30.**   **An independent jurisdictional basis exists under 28 U.S.C. § 1331**. Bitmain's First Amended Answer, Affirmative Defenses, and Counterclaim asserts a cause of action under the Computer Fraud and Abuse Act (18 U.S.C. § 1030)—a claim arising under federal law that establishes independent federal question jurisdiction under 28 U.S.C. § 1331. [ECF No. 14, p. 27]. This amendment follows recent deposition and hearing testimony revealing that Zaniewski accessed Bitmain's Hosted Servers without authorization, reconfigured them to divert their hash power to a mining pool under his control, and directed the resulting Bitcoin rewards to digital wallets he controlled.[24] Zaniewski also disconnected Bitmain's Monitoring Software, AntSentry, and installed at least three unauthorized monitoring programs without Bitmain's consent.[25] By disabling Bitmain's Monitoring Software, reconfiguring the Hosted Servers, and retaining the proceeds from the misappropriated Bitcoin after liquidating it through his personal cryptocurrency exchange accounts,[26] Zaniewski accessed misused Bitmain's computer systems— conduct that falls squarely within the scope of the Computer Fraud and Abuse Act.

---

[24] Appx. at 0168–69 (TI Hr'g Tr. Vol. 1 at 13:23–14:07); Appx. at 0196 (Zaniewski Depo. Tr. Vol. 1 at 109:02–13); Appx. at 0213–14 (Smith Depo. Tr. at 58:04–17, 96:12–14); Appx. at 0235–36 (Zaniewski Depo. Tr. Vol 2 at 329:18–330:12); Appx. at 0244 (Sept. 30, 2025 Bankr. Hr'g Tr. at 61:03–18).

[25] Appx. at 0252–53 (admitting that Debtor disconnected the Monitoring Software— AntSentry) (Oct. 2, 2025 Bankr. Hr'g Tr. at 51:11–52:08); Appx. at 0227–28 (admitting that Debtor refused to allow Bitmain to install AntSentry and instead installed "Foreman and Dashboard in order to monitor") (Zaniewski Depo. Tr. Vol. 2 at 243:20–244:18); Appx. at 0250–51 (admitting that Debtor installed "Vnish" another software on the Hosted Servers without Bitmain's permission) (Oct. 2, 2025 Bankr. Hr'g Tr. at 7:16–8:02).

[26] Appx. at 0171–75 (TI Hr'g Tr. Vol. 1 at 85:10–89:24); Appx. at 0244 (Sept. 30, 2025 Bankr. Hr'g Tr. at 61:03–18).

**31.** The presence of jurisdiction independent of § 1334(b) renders mandatory abstention unavailable. As stated by the U.S. Supreme Court in *Royal Canin U.S.A., Inc. v. Wullschleger*:

> The plaintiff is the master of the complaint, and therefore controls much about her suit. She gets to determine which substantive claims to bring against which defendants. And in so doing, she can establish—or not— the basis for a federal court's subject-matter jurisdiction. . . . And the plaintiff's control over those matters extends beyond the time her first complaint is filed. If a plaintiff amends her complaint, the new pleading supersedes the old one: The original pleading no longer performs any function in the case. . . . So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The configuration accomplished by an amendment may bring the suit newly within or newly outside a federal court's jurisdiction.

604 U.S. 22, 35–36 (2025) (citations and internal quotation marks omitted).

**32.** **An independent jurisdictional basis also exists under 28 U.S.C. § 1332**. In addition to federal question jurisdiction, this Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship: **(a)** Bitmain is a Georgia corporation with its principal place of business in Beijing, China, **(b)** Debtor is a Delaware corporation with its principal place of business in Texas, and **(c)** Jamieson Zaniewski is a citizen of California.[27] [ECF No. 14, p. 9]. Accordingly, the existence of diversity jurisdiction precludes mandatory abstention.

**33.** **Bitmain's claims cannot be timely adjudicated in State Court**. In analyzing the timely adjudication element of mandatory abstention, courts consider the following factors: (1) backlog of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court proceeding would prolong administration or liquidation of the estate. *In re Lorax*, 295 B.R. at 93 (collecting cases). As the *Lorax* court emphasized, "special emphasis on the

---

[27] Appx. at 0192–94 (Zaniewski Depo. Tr. Vol. 1 at 14:09–11, 15:23–16:21).

status (and needs) of the bankruptcy proceeding is the key to the timing issue . . . . Otherwise, 'timely adjudication' is a meaningless concept in the bankruptcy concept.'" *Id.* Applying these principles, the Court should consider not only the procedural posture of the State Court but also whether the bankruptcy forum can more efficiently and effectively manage the claims in a manner consistent with the estate's needs.

**34.**    Each of these factors weigh heavily against abstention. The State Court proceeding has been dormant for months due to the automatic stay triggered by Debtor's bankruptcy filing on August 5, 2025. Even prior to the bankruptcy, Debtor and Zaniewski's repeated noncompliance with court orders and delay tactics—including their failure to provide Bitmain with access to the Data Center Facility and Hosted Servers, failure to allow Bitmain to install its Monitoring Software on the Hosted Servers, failure to disclose all wallet addresses, and failure to produce complete Coinbase reports as required—left the State Court action unable to progress.[28] Their ongoing noncompliance prevented Bitmain from obtaining critical information and rendered meaningful progress in the State Court impossible. Consequently, the case has not progressed beyond Bitmain's motions for sanctions— the OSC Motion and Motion to Enforce—against Debtor and Zaniewski, which were not heard prior to removal. [ECF Nos. 3-11, 3-39]. Notably, no party had propounded written discovery before removal.

**35.**    In contrast, this adversary proceeding is actively progressing. Counsel for Bitmain and Zaniewski had a Rule 26(f) conference on October 10, 2025 [ECF No. 13], and the Court's Rule 7016 Conference is scheduled for October 22, 2025. [ECF No. 4]. Moreover, this Court has already gained significant familiarity with the facts, parties, and overlapping claims during a recent three-day hearing in the bankruptcy

---

[28] *See supra* Section II.B, ¶¶ 15–26.

case. Remanding to the State Court would discard this institutional knowledge, forcing the State Court to reacquaint itself with a complex record that has continued to evolve since the petition date, thus hindering efficient State Court case management.

36.     Remanding the matter to State Court would also introduce unnecessary delays and procedural complexities, particularly given Zaniewski's prior arguments concerning the automatic stay's application to Bitmain's claims against him. In his August 6, 2025 letters to the State Court (the "***August 6 Letters***"), Zaniewski contended that proceeding against him would violate the stay due to the "inextricably intertwined" nature of the claims with those against Debtor, potentially rendering any ruling void. [ECF No. 3-43, p. 2; ECF No. 3-45, p. 2]. As discussed more fully *infra* at Section C, paragraph 50, this stance raises uncertainty about the State Court's willingness to adjudicate the claims against Zaniewski without first resolving these stay-related issues, which could necessitate revisiting compliance disputes, readdressing the stay's scope, and reestablishing procedural footing—all of which would prolong the case significantly. Such delays undermine the efficiency of bankruptcy proceedings and are inconsistent with the need for timely resolution of matters affecting Debtor's estate, as discussed further *infra* at Section B, paragraphs 41–47.

37.     The issues in this adversary proceeding are notably complex, especially with Bitmain's Computer Fraud and Abuse Act claim introducing federal law questions. Adjudicating intertwined state and federal claims in the State Court would likely be slower and increase the risk of inconsistent rulings and duplicative proceedings. Moreover, the outcome of these disputes directly impacts the bankruptcy estate's administration, including asset allocation, creditor claims resolution, and determination of Debtor's liabilities and property rights.

**38.** Practical considerations further support retention of jurisdiction. A procedural reset in the State Court—if it agrees to proceed despite Zaniewski's argument that it cannot due to the automatic stay—would be inefficient and delay resolution. Conversely, this Court, already engaged with the matter, can efficiently oversee discovery, motion practice, and trial on a coordinated schedule. For these reasons, Bitmain's claims cannot be timely adjudicated in state court, and Zaniewski's cannot satisfy the timely adjudication element of § 1334(c)(2). Retaining jurisdiction ensures an efficient, coordinated, and consistent resolution that safeguards the bankruptcy estate and its creditor.

## B. <u>Zaniewski Is Not Entitled To Permissive Abstention Or Equitable Remand.</u>

**39.** Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), providing that, a court "may in the interest of justice, or in the interest of comity with State courts or respect for State law," abstain from hearing a proceeding related to a bankruptcy case. 28 U.S.C. § 1334(c)(1). Similarly, a court may remand a cause of action on any equitable ground. *In re Hous. Reg'l Sports Network, L.P.*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014).

**40.** In determining whether to abstain under § 1334(c)(1) or remand, courts have developed a nonexclusive list of factors to be considered. *Id.*; *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987). These factors include:

    (1)    the effect on efficient administration of the estate;

    (2)    the extent to which state law issues predominate;

    (3)    the difficulty of the applicable law;

    (4)    the presence of a related proceeding in state court;

    (5)    the jurisdictional basis other than § 1334;

    (6)    the relatedness of the proceeding to the main bankruptcy case;

    (7)    the substance rather than form of an asserted core proceeding;

(8)     the feasibility of severing state-law claims from core bankruptcy matters;

(9)     the burden on the bankruptcy court's docket;

(10)    the likelihood that the bankruptcy filing involves forum shopping;

(11)    the existence of a right to jury trial;

(12)    the presence of non-debtor parties;

(13)    comity; and

(14)    the possibility of prejudice to other parties.

*In re Hous. Reg'l*, 514 B.R. at 215; *In re Republic Reader's*, 81 B.R. at 429.

**41.**    Considering these factors, permissive abstention and equitable remand are neither warranted nor appropriate. First and foremost, abstention would impair the efficient administration of the bankruptcy estate (factor 1), as explained above. The claims against Debtor and Zaniewski are deeply intertwined—a contention Zaniewski advanced in the State Court. [ECF No. 3-43, p. 2; ECF No. 3-45, p. 2]. The claims also turn on overlapping facts regarding the mining operations, digital assets, and financial transactions. Fragmenting these issues between this Court and the State Court would lead to duplication, inconsistent rulings, and prolonged resolution of core matters directly affecting the estate.

**42.**    Although some claims involve state law, a significant federal issue predominates (factor 2) due to Bitmain's Computer Fraud and Abuse Act claim, arising from recent deposition and hearing testimony revealing Zaniewski's unauthorized access to Bitmain's computer systems and data. The applicable law further militates against abstention (factor 3), as the issues extend beyond state-law disputes. Bitmain's Computer Fraud and Abuse Act claim raises complex federal questions regarding unauthorized computer access, digital asset control, and electronic data integrity—technical matters particularly suited for adjudication in

federal court. This federal claim emphasizes the need for federal jurisdiction and the inefficiency of remanding the case to State Court.

43.     Further, abstention would reward the very misconduct that paralyzed the State Court proceeding. Debtor and Zaniewski repeatedly flouted court orders by denying Bitmain access to the Data Center Facility and Hosted Servers, refusing to allow Bitmain to install its Monitoring Software on the Hosted Servers, withholding cryptocurrency wallet addresses, and failing to produce complete accountings of mined Bitcoin, reports of wallet transactions, and Coinbase reports. Such violations stalled the State Court action, required repeated hearings and motion practice, and underscored the inefficiencies of that forum in achieving timely and effective adjudication of the claims (factor 14).

44.     Other factors also weigh against abstention and equitable remand. There are independent jurisdictional bases outside of § 1334 (factor 5), as explained above; the proceeding is closely related to the bankruptcy case (factor 6); and the bankruptcy court's docket is well-equipped to handle this matter efficiently (factor 9). Nor is there any indication of forum shopping by Bitmain (factor 10)—the case is properly before this Court because Debtor invoked bankruptcy protection, and Bitmain's removal to this Court is a result of that filing.

45.     Comity (factor 13) does not support abstention. The State Court proceeding has languished for months due to Debtor and Zaniewski's noncompliance and the automatic stay, while this Court has gained substantial familiarity with the parties, issues, and factual record in a short period of time. Remanding would not enhance comity or efficiency but would instead delay resolution, prejudicing Bitmain and other creditors and interested parties by leaving critical issues unresolved.

46.     In conclusion, virtually every applicable factor weighs against permissive abstention and equitable remand. Retaining jurisdiction serves the interest of justices (just not Zaniewski's personal interests), promotes efficient estate

administration, and ensures consistent, comprehensive adjudication of intertwined claims involving Bitmain, Debtor, and Zaniewski.

C.  **Zaniewski's Own Prior Statements In The State Court Undermine His Request For Mandatory Or Permissive Abstention.**

47.  In the August 6 Letters, Zaniewski argued that Bitmain's claims against him were "inextricably intertwined" with the claims against Debtor, such that the automatic stay under 11 U.S.C. § 362 should extend to him as a non-debtor. [ECF No. 3-43, pp. 1–2; ECF No. 3-45, pp. 1–2]. By asserting that any ruling against him "could potentially impose liability on Orb in violation of the automatic stay" and that Bitmain was using him "as a proxy for Orb as an end run around the automatic stay," Zaniewski effectively conceded that adjudication of the claims against him would directly impact Debtor's estate and reorganization efforts. [ECF No. 3-43, p. 2] This admission demonstrates that the proceeding is not merely "related to" the bankruptcy case but arises in the context of the bankruptcy, rendering it a core proceeding under 28 U.S.C. § 157(b). Core proceedings include matters concerning the administration of the estate, such as the scope and application of the automatic stay, which Zaniewski himself invoked and asked the State Court to enforce. *See* 28 U.S.C. §§ 157(b)(2)(A), (G). Because Zaniewski has failed to prove that this is a non-core proceeding—the third element required for mandatory abstention—he is not entitled to relief under § 1334(c)(2).

48.  Moreover, Zaniewski's prior arguments in the State Court highlight the inconsistency in his current position and weigh against permissive abstention under 28 U.S.C. § 1334(c)(1). In the August 6 Letters, Zaniewski urged the State Court to "hold that the automatic stay applies to the entire case as a whole" and to pass a scheduled hearing, citing Fifth Circuit and Texas appellate cases interpreting federal bankruptcy law. [ECF No. 3-43, p. 2; ECF No. 3-45, pp. 1–2]. He even attached

Debtor's bylaws to argue that Debtor's indemnification obligation to him as an officer would make any judgment against him "in fact be a judgment against Orb." [ECF No. 3-45, pp. 1–27]. This active invocation of federal bankruptcy principles before the State Court shows that Zaniewski previously believed the State Court should resolve these intertwined issues by halting the State Court case. Now, however, he seeks abstention to return the matter to that same forum, ostensibly in the "interest of comity with State courts or respect for State law." [ECF No. 10, ¶¶3 , 35 pp. 2, 10]. Such a flip-flop does not serve the interest of justice; instead, it promotes forum-shopping and inefficiency. Abstaining would only delay resolution of claims that, by Zaniewski's own admission, are so closely linked to Debtor's estate that they implicate core bankruptcy concerns, such as protecting the estate from indirect liability and ensuring orderly reorganization. This Court should decline permissive abstention to avoid piecemeal litigation and to centralize adjudication of matters affecting the bankruptcy estate.

**49.**    Zaniewski's prior arguments in the State Court also underscore the general rule and narrow exception regarding the automatic stay's application to non-debtors, further undermining his abstention request. As a general rule, the automatic stay under 11 U.S.C. § 362 applies only to the debtor, not to co-defendants or non-debtor parties. *See GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) ("By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors."). The Fifth Circuit has recognized a narrow exception, however, whereby a bankruptcy court may invoke § 362 (often in conjunction with its equitable powers under § 105) to stay proceedings against nonbankrupt co-defendants where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc. v.*

*Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (citation omitted). By invoking this exact exception in the August 6 Letters—arguing that the claims were so intertwined due to Debtor's indemnification obligations and Zaniewski's actions as its president—Zaniewski conceded an identity of interests that would make any judgment against him effectively one against Debtor. [ECF No. 3-23, pp. 1–2; ECF No. 3-25, pp. 1–2]. This position directly contradicts his current abstention argument, as it highlights how the claims implicate core bankruptcy concerns, such as protecting the estate from indirect liability, rather than being purely non-core state law matters suitable for remand.

**50.**     Zaniewski's emphasis on the "inextricably intertwined" nature of the claims also undermines the fifth element of mandatory abstention: that the action can be timely adjudicated in state court. In the August 6 Letters, Zaniewski contended that proceeding against him in the State Court would violate the automatic stay and result in void actions, as any rulings could "impose liability on Orb." [ECF No. 3-43, p. 2]. He further argued that Bitmain should seek relief from the bankruptcy court, such as lifting the stay, rather than continuing in state court. *Id.* This position necessarily means the State Court cannot fully or timely resolve the claims without this Court's involvement, as the intertwined issues require interpretation of federal bankruptcy law—including the stay's extension to non-debtors—which state courts may lack authority to finally determine. *See, e.g., Reliant Energy*, 349 F.3d at 825 ("[A] bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.") (citations and internal quotation marks omitted). By highlighting this dependency on bankruptcy rulings, Zaniewski has failed to meet his

burden of proving timely adjudication in state court is feasible, further barring mandatory abstention.

51.     Finally, the August 6 Letters reveal that his abstention motion is an attempt to avoid this Court's oversight while benefiting from the stay he previously sought to extend. He argued that Bitmain's OSC Motion and Motion to Enforce "exemplify why [the stay] should" apply to him, as they "accuse the 'Orb Parties'" collectively and rely on acts he committed as Debtor's president. [ECF No. 3-43, p. 2]. Yet, if the claims are truly separable for state court adjudication—as required for abstention—then they cannot be so intertwined as to warrant stay extension. Zaniewski cannot have it both ways: either the claims are distinct and non-core, supporting abstention but not stay extension, or they are intertwined and affect the estate, making them core and unsuitable for abstention. *See* 28 U.S.C. § 157(b)(2)(A), (G). His prior assertions tip the scale against him, and this Court should deny the Motion to prevent such contradictory positioning from undermining the efficient administration of the bankruptcy case.

## IV.   <u>CONCLUSION</u>

52.     Bitmain respectfully requests that the Court enter an order denying the Motion because (1) Zaniewski failed to establish all the necessary elements for mandatory abstention, (2) the factors for considering permissive abstention and equitable remand weigh against abstention and remand and in favor of retention, and (3) Zaniewski's own prior statements in the State Court undermine his request for abstention.

Respectfully submitted,

By: */s/ Jacob Sparks*

**JACOB SPARKS**
Texas Bar No. 24066126
Email: Jacob.Sparks@NelsonMullins.com
**XENNA K. DAVIS**
Texas Bar No. 24132037
Email: Xenna.Davis@NelsonMullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Tel: (469) 484-4758
Fax: (469) 828-7217

**KASI CHADWICK**
Texas Bar No. 24087278
Email: Kasi.Chadwick@NelsonMullins.com
**MIRANDA GRANCHI**
Texas Bar No. 24120862
Email: Miranda.Granchi@NelsonMullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Tel: (346) 646-3221
Fax: (346) 241-3748

*Attorneys for Bitmain Technologies Georgia Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Bankruptcy Court's electronic filing system on October 17, 2025, on persons who have appeared in this case.

By: */s/ Jacob Sparks*
**JACOB SPARKS**